```
                   IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF ILLINOIS
                             EASTERN DIVISION

 VIRGINIA TORRES,                     )   Docket No. 16 C 06665
                                      )
                 Plaintiff,           )   Chicago, Illinois
                                      )   November 16, 2016
            v.                        )   9:16 a.m.
                                      )
 LVNV FUNDING, LLC and NATIONS        )
 RECOVERY CENTER, INC.,               )
                                      )
                 Defendants.          )


                 TRANSCRIPT OF PROCEEDINGS - Motion
             BEFORE THE HONORABLE VIRGINIA M. KENDALL


 APPEARANCES:

 For the Plaintiff:      COMMUNITY LAWYERS GROUP LTD by
                         MS. CELETHA CHATMAN
                         73 West Monroe
                         Chicago, Illinois  60603

 For the Defendants:     HINSHAW & CULBERTSON LLP by
                         MR. NABIL G. FOSTER
                         222 North LaSalle Street, Suite 300
                         Chicago, Illinois  60601




 Court Reporter:         GAYLE A. McGUIGAN, CSR, RMR, CRR
                         Federal Official Court Reporter
                         219 South Dearborn, Room 2318-A
                         Chicago, Illinois 60604
                         (312) 435-6047
                         Gayle_McGuigan@ilnd.uscourts.gov
```

1    (Proceedings heard in open court:)
2            THE CLERK:  16 C 6665, Torres versus LVNV Funding.
3            THE COURT:  Good morning.
4            MS. CHATMAN:  Good morning, your Honor.  Celetha
5    Chatman on behalf of the plaintiff.
6            MR. FOSTER:  Good morning, your Honor.  Nabil Foster
7    on behalf of both defendants.
8            THE COURT:  Good morning.
9            Have we been able to get this resolved or not?
10           MR. FOSTER:  No, we haven't, your Honor.
11           We've had a conversation outside the courtroom, and it
12   appears as if the plaintiff's counsel has identified that on
13   November 23rd, there may be an opening for the client, but she
14   hasn't spoken to her client, and so that remains an opening --
15   I apologize for bringing this motion, your Honor.
16           It really became -- in the previous settlement
17   discussions that we've had with the plaintiff's counsel, it was
18   of an order of magnitude in one area; and when we received the
19   settlement demand, because we have a settlement conference set
20   for -- before Judge Valdez on December 7th, the settlement
21   range jumped by an order of magnitude that was significant,
22   such that it left us perplexed as to how could something go
23   from one area to something that was really quite unreasonable,
24   and, hence, it prompted the notion of, like, we didn't think we
25   needed to depose, because of the previous ranges of settlement

1  demands, but when it astronomically increased, it became a
2  question of, well, in order for the settlement conference to be
3  worthwhile, we need to be able to talk to the plaintiffs -- the
4  plaintiff under oath about what are her actual damages.
5          This is a case that involves a single voice-mail
6  message left on their answering machine, and this lawsuit was
7  filed, and so, therefore, what possibly could be the
8  emotional --
9          THE COURT: So what's the demand in the settlement?
10         MR. FOSTER: $11,000 in cash to the plaintiff, sum
11 total of $20,000 all in with the attorney fees and things.
12         So that's -- where you get $11,000 for a single
13 voice-mail message when they're already represented by counsel,
14 I understand may appear as a technical violation, there's a
15 bona fide air to this, but we're trying to resolve it. And as
16 a result of that, we sent notice of deposition. We wanted to
17 find a date, but -- so I apologize for bringing this motion.
18 Normally, I wouldn't bring anything like this.
19         THE COURT: Okay. So is there some emotional damages
20 that jumps her up to this level that you think she deserves
21 that kind of funds?
22         MS. CHATMAN: Well, we do think she deserves that kind
23 of fund, your Honor. Juries usually decide this, you know,
24 usually they are inclined to grant that, so we don't think it's
25 out of the realm to ask for ten. It's actually kind of low.

1                So -- and when the magistrate judge asked us what we
2     needed for settlement discussions or to have this conference,
3     defense counsel never brought up that they would need to depose
4     our client, your Honor.
5                They wanted a settlement conference to lower cost,
6     which is fine, your Honor, but now they want to depose the
7     plaintiff, which is just incurring more cost.
8                And then, your Honor, they -- they served their notice
9     of deposition, you know, and they wanted to depose the client
10    within I believe a week and a half, and it just wasn't enough
11    time.
12               As I told defense counsel, I have depositions
13    scheduled from December 1st to December 7th in three other
14    cases that fact discovery is closing.
15               THE COURT:  Well, I see his concern that in a case of
16    a single fax, it is helpful to know why she's claiming damages
17    of that amount.  I don't think it is a reasonable amount to
18    claim for a single fax.  Usually it's a statutory damage and
19    your attorney fees.  So I don't know what juries are doing that
20    you're talking about, because I don't see that when I settle
21    these cases.  That's not the kind of awards that are being
22    given with just a single fax, if that's what the facts -- the
23    facts are, F-A-C-T-S.
24               So I'm just -- I can see his concern about deposing
25    her.

1           I also see yours, that you've got other things on your
2   plate, and you were given this date by the magistrate judge,
3   which is like getting the golden ticket, because they are so
4   hard to get into for their settlement conferences.
5           So is there a way that you can arrange for her to be
6   deposed on the 23rd, as you were saying earlier?
7           MS. CHATMAN:  Your Honor, obviously I would have to
8   talk to her, to the client, about being deposed on the 23rd.  I
9   know her schedule is tight because she's going to have to find
10  someone to take care of her mother, because she's taking care
11  of her mother right now, so that's kind of the concern, but I
12  could obviously try to get it done, but I just have to talk to
13  the client, your Honor.
14          THE COURT:  What can possibly occur in a deposition
15  other than I was at my house at this time and place, received
16  the fax and --
17          MR. FOSTER:  It was a voice-mail message --
18          THE COURT:  Oh, an voice-mail message --
19          MR. FOSTER:  Voice-mail message left on her answering
20  machine.
21          MS. CHATMAN:  And, your Honor, our client thinks other
22  calls were made.  We won't know until we find -- until we get
23  their discovery responses, which is due 11-21, so that's going
24  to take -- that's going to take into account --
25          THE COURT:  Can you give her the discovery responses

1    earlier?

2         MR. FOSTER:  Yes, your Honor, but there was only
3    one -- there's only one voice-mail message left, your Honor.
4         THE COURT:  Well, apparently she's claiming that there
5    might be others.  I don't know.
6         MR. FOSTER:  Well, she would have them because they
7    would have been left on her answering machine.
8         MS. CHATMAN:  We want the phone logs and all of that
9    information, which we asked for.
10        THE COURT:  What are phone logs?
11        MS. CHATMAN:  So what happens is defendants, they keep
12   all this information, all calls and everything is kept by them,
13   so we would want all that information.  We've asked for it in
14   discovery.
15        THE COURT:  And do you have that?
16        MR. FOSTER:  Yes, your Honor, getting it from the
17   client, the answers that -- we're getting the documents and
18   we'll produce them.
19        THE COURT:  So if you have it and it shows one call,
20   then that makes your issue easier, doesn't it?
21        MR. FOSTER:  Yes.  We have no problem producing it.
22   They have -- discovery is not due yet.
23        THE COURT:  I know, but you're asking -- you're asking
24   to move up the deposition, and the deposition has to be done
25   with discovery.  She can't, you know, lay a -- you can't lay a

1    trap for her to not be able to answer with whatever records
2    she's entitled to review prior to having her client be
3    interviewed.
4        MR. FOSTER:  I understand, your Honor.
5        The answers are due this week, and so I think -- this
6    week we will be producing these documents --
7        THE COURT:  Well, the standard course is at a bare
8    minimum three to five days before a deposition.
9        So if you're talking about November 23rd, I mean,
10   that's -- two business days is the 21st and 22nd, today is the
11   16th, you've got to turn them over now.
12       Do you have them to turn over?
13       MR. FOSTER:  I do not have the documents in our
14   possession today.  Client is sending --
15       THE COURT:  I don't know if you're going to be able to
16   get your -- I mean, if that's the only date that you're -- the
17   only date that she has, you should raise it with Judge Valdez
18   and say you're not ready for the settlement conference then.
19       MR. FOSTER:  Okay.
20       THE COURT:  I mean, and then if he wants the
21   deposition, tell her that the deposition, you want it done
22   because of the jump in numbers.
23       MS. CHATMAN:  I provided dates for her deposition,
24   so --
25       THE COURT:  What dates did you provide?

1    MS. CHATMAN:  I provided December 8, December 18, and
2 another date.  I don't have the last date off the top -- it was
3 three dates.
4    THE COURT:  Well, see if Judge Valdez will move it to
5 the following week after the 8th.  She'll probably bump you
6 into March, and that's -- what good is that on a case where
7 you're asking $11,000 as your starting demand, and you know
8 you're not going to get that if that's your starting demand.
9    It's really unreasonable for such a small case that
10 you are fighting like this, the -- really.
11    So I'm going to not -- I'm not going to grant the
12 motion to compel the deposition.  I think you should work this
13 out and work with Judge Valdez.
14    You need to get her the materials.  And the sooner you
15 do that, the more weight you have to seek relief from the Court
16 to say, you know, she's ready to go.
17    MR. FOSTER:  We will re-double our efforts to get the
18 materials from the client at the due date -- the due date I
19 think was tomorrow or Thursday -- tomorrow is Thursday,
20 correct?  So --
21    THE COURT:  Tomorrow is Thursday, yeah.
22    MR. FOSTER:  So if -- I will see if I -- there's some
23 way I might be able to get them today and get them out today.
24    THE COURT:  All right.  Just think of all the time and
25 effort you spent just on this today that could have been phone

1  calls.
2          All right.  Thanks.
3          MR. FOSTER:  Thank you, your Honor.
4          MS. CHATMAN:  Thank you.
5     (Proceedings concluded at 9:25 a.m.)
6                    C E R T I F I C A T E
7     I certify that the foregoing is a correct transcript of the
8  record of proceedings in the above-entitled matter.
9
10
    _/s/ GAYLE A. McGUIGAN_                       _November 16, 2016_
11  Gayle A. McGuigan, CSR, RMR, CRR                      Date
    Official Court Reporter
12
13
14
15
16
17
18
19
20
21
22
23
24
25