# EXHIBIT C

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3
    VIRGINIA TORRES,          )
 4                            )
       PLAINTIFF,             )
 5                            )  Civil Action No. 16-cv-06665
    v.                        )
 6                            )  Hon. Virginia M. Kendall
    LVNV FUNDING, LLC, and    )
 7  NATIONS RECOVERY CENTER,) Magistrate Judge Maria Valdez
    INC.,                     )
 8                            )
       DEFENDANTS.            )
 9

10

11

12

13          30(b)6 DEPOSITION OF TONYA R. HENDERSON
                 GREENVILLE, SOUTH CAROLINA
14                    JANUARY 25, 2017

15

16

17

18

19

20

21

22
    REPORTER:  CATHY L. YOUNG, CVR-M
23             Dallas Reporting, A Huseby Company

24

25
```

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
 1    APPEARANCES:        For the Plaintiff -

 2                        Celetha Chatman, Esquire
                          Community Lawyers Group, Ltd.
 3                        73 W. Monroe Street, Suite 502
                          Chicago, IL 60603
 4                        cchatman@communitylawyersgroup.com
                          312-757-1880
 5
                          For the Defendants -
 6
                          Nabil G. Foster, Esquire
 7                        Hinshaw & Culbertson
                          222 North LaSalle Street
 8                        Suite 300
                          Chicago, Illinois 60601-1081
 9                        nfoster@hinshawlaw.com
                          312-704-3527
10

11

12                              INDEX

      By Ms. Chatman                        Page 04
13
      By Mr. Foster                         Page 75
14

15

16                       INDEX TO EXHIBITS

17
      Exhibit A         Complaint            Page 04
18
      Exhibit C         Account Event History  Page 04
19
      Exhibit D         Summons and Complaint  Page 04
20

21

22

23

24

25
```

30(b)(6)

```
 1        Deposition of Resurgent, by and through its

 2   representative Tonya R. Henderson, was taken before

 3   me, Cathy L. Young, CVR-M, and Notary Public for the

 4   State of South Carolina; at the offices of Regus

 5   Business Center, 128 Millport Circle, Suite 200,

 6   Greenville, South Carolina; commencing at 2:01 p.m.

 7   on January 25, 2017; in accordance with the South

 8   Carolina Rules of Civil Procedure;

 9        That the signing of the transcript by the

10   witness is waived.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
 1    (Court Reporter marks Exhibit A, Complaint,
 2   attached hereto.)
 3   (Court Reporter marks Exhibit C, Account Event
 4   History, attached hereto.)
 5   (Court Reporter marks Exhibit D, Summons and
 6   Complaint, attached hereto.)
 7        Tonya R. Henderson, having been duly sworn,
 8   testifies as follows:
 9                    DIRECT EXAMINATION
10        BY MS. CHATMAN:
11        Q.  Well, my name is Celetha Chatman.  I'm the
12   attorney who will be taking your deposition today.
13   Have you been deposed before?
14        A.  Yes, I have.
15        Q.  Well, in a deposition, I will be asking you
16   questions regarding the topics in the Notice of
17   Deposition and your answers will be recorded by the
18   Court Reporter who is present here today.  You
19   understand that you need to speak clearly, answer
20   orally when giving your answers so that we may hear
21   you clearly.  The Court Reporter will not be able to
22   record a nod or a shake of your head.  Do you
23   understand?
24        A.  Yes, I do.
25        Q.  I will be asking you questions, some of
```

```
 1    which you may not understand.  If you don't
 2    understand, don't answer it and I will try to ask
 3    the question in a manner understandable to you.  Is
 4    that okay?
 5        A.  Yes.
 6        Q.  If you need to take a break, that's fine.
 7    Tell me or your attorney and you will finish your
 8    answer if you are in the middle of it, then you can
 9    take a break.  Is that okay?
10        A.  Yes.
11        Q.  If you give an answer and later remember
12    some additional information in response to the
13    earlier questions, please tell us you would like to
14    add something and we can do that while it's on your
15    mind.  Is that okay?
16        A.  Yes.
17        Q.  Are you taking any medicines or drugs that
18    might make it difficult for you to understand and
19    answer my questions here today?
20        A.  No, ma'am.
21        Q.  Have you had alcohol within the last eight
22    hours?
23        A.  No, ma'am.
24        Q.  Are you sick at all today?
25        A.  No.
```

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
 1        Q.  Any reason you could think that you will
 2   not be able to answer my questions here today
 3   truthfully and fully?
 4        A.  No, ma'am.
 5        Q.  I'm going to be asking you questions about
 6   the debt thought to be collected by LVNV Funding,
 7   LLC, from Plaintiff in Case No. 16-cv-06665, filed
 8   in the Northern District of Illinois, Eastern
 9   Division, Titled Virginia Torres v. LVNV Funding,
10   LLC, and Nations Recovery Incorporated.  When I say
11   federal actions, I mean that case, and when I say
12   debt, I mean the debt attempted to be collected in
13   that case.  Is that clear?
14        A.  Yes, it is.
15        Q.  When I say LVNV, I mean LVNV Funding, LLC.
16   Is that clear?
17        A.  Yes, ma'am.
18        Q.  Can you tell me the name of your employer?
19        A.  Resurgent Capital Services.
20        Q.  Resurgent Capital Services.  Okay.  What's
21   the relationship between Resurgent Capital Services
22   and LVNV?
23        A.  Resurgent Capital Services manages and
24   services all the accounts that LVNV owns.
25        Q.  When you say, "manages and services the
```

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
 1   accounts," what do you mean?
 2        A.  They manage and service as in they place
 3   accounts with collection agencies, any of the work
 4   that needs to be performed on the account, Resurgent
 5   would do that.
 6        Q.  Can you tell me your current title at
 7   Resurgent Capital Services?
 8        A.  I am a managing paralegal.
 9        Q.  Managing paralegal.  Okay.  Can you tell me
10   your duties as a managing paralegal?
11        A.  Certainly.  One of my duties is, I am a
12   30(b)(6) witness on behalf of Resurgent and LVNV
13   Funding.  I'm an authorized representative for LVNV
14   Funding.  I manage a team of paralegals within the
15   litigation department that work on anything ranging
16   from counterclaims to discovery requests that need
17   verifications or settlement agreements for approval.
18        Q.  Okay.  Can you tell me what type of
19   business LVNV is?
20        A.  What type?  It's a limited liability
21   company.
22        Q.  As a business, what service does LVNV
23   provide?
24        A.  LVNV is a debt owner.
25        Q.  When you say "debt owner," what do you
```

30(b)(6)

1   mean?

2        A.  It is an entity that owns -- basically owns

3   debts.  That's the only thing it does.

4        Q.  All that LVNV does is own debt?  Okay.  Is

5   that a fair statement?

6        A.  That LVNV, all it does is own debts?

7        Q.  Uh-huh.

8        A.  I believe that would be a fair statement.

9   Yes, ma'am.

10       Q.  Does LVNV have any employees?

11       A.  No, ma'am.

12       Q.  Okay.  Can you tell me if LVNV Funding

13  purchased Ms. Torres' account?

14       A.  Well, LVNV Funding, the particular account

15  we're talking about, LVNV Funding did acquire that

16  account, and is the current --

17       Q.  I'm sorry.  I didn't hear the last thing

18  you said?

19       A.  I was just going to say it is the current

20  owner of the account.

21       Q.  Do you know when LVNV acquired Ms. Torres'

22  account?

23       A.  Without looking at any documentation, I

24  believe it was -- well, I'd be making a guess

25  without looking at any records or your exhibits,

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
 1    that it was around --

 2         Q.  Okay.

 3         A.  I was going to say 2005.  But I would need

 4    to look at the exhibits to be sure.

 5         Q.  Can you look at what is marked as Exhibit

 6    C?

 7         A.  Okay.  I have it.

 8         Q.  Can you tell me what this document is?

 9         A.  This document is the account event history.

10    It is the electronic, I guess, software that shows

11    the account information.

12         Q.  Are you familiar with this document?

13         A.  Yes, ma'am, I am.

14         Q.  Would this document help you answer when

15    LVNV acquired Ms. Torres' account?

16         A.  Yes, it would.

17         Q.  Now, looking at this document, can you tell

18    me when LVNV acquired Ms. Torres's account?

19         A.  On June 23rd, 2003.

20         Q.  June 23rd, 2003.  Okay.  When LVNV acquired

21    Ms. Torres' account, was it still just a debt owner?

22         MR. FOSTER:  Object to the form.

23              BY THE WITNESS:

24         A.  I don't understand that.

25         Q.  Okay.  Sure.  When LVNV Funding owned or
```

30(b)(6)

1    fist acquired Ms. Torres' account in June of 2003,

2    was Resurgent Capital Services still servicing --

3    still providing all the services for LVNV?

4         MR. FOSTER:  Object to the form.

5              BY THE WITNESS:

6         A.  Once LVNV acquired the Torres account,

7    Resurgent, as it's master servicing agent, would

8    have begun work on the account.

9         Q.  Okay.  So, that answers my question.  My

10   question was whether or not Resurgent was still in

11   the picture when LVNV Funding acquired Ms. Torres'

12   account.  Okay.  Now, to your knowledge, does LVNV

13   ever purchase business accounts?

14        A.  LVNV has acquired a collection of accounts.

15   Some have been business and some have been consumer.

16        Q.  Do you know whether or not Ms. Torres'

17   account is a consumer account?

18        A.  No, ma'am, I do not.

19        Q.  Will any documents -- would the account

20   notes here, which are marked as Exhibit C, help you

21   identify whether or not this is a consumer account

22   or business account?

23        A.  No, ma'am.  There's nothing here -- well,

24   give me one second.  (Reviews document.)  I don't

25   see anything that indicates either way.

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
 1        Q.  When LVNV acquires an account, does LVNV
 2   usually receive any type of account statements?
 3        A.  They can.  Yes, ma'am.
 4        Q.  Did LVNV receive any account statements for
 5   Ms. Torres' account?
 6        A.  I did not see any in my review of the
 7   records.
 8        Q.  Does LVNV ever send consumers letters
 9   regarding their accounts?
10        A.  No, ma'am.
11        Q.  Does LVNV ever call consumers regarding
12   their accounts?
13        A.  No, ma'am.
14        Q.  Does LVNV's servicer ever mail letters to
15   consumers regarding their accounts?
16        A.  Yes, ma'am.  They can.
17        Q.  Does LVNV's services ever place phone calls
18   to consumers regarding their accounts?
19        A.  Servicer as in Resurgent and anyone
20   Resurgent hires, they could, yes.
21        Q.  Yes.  Okay.  Can you turn to what has been
22   marked as Exhibit D, D as in dog?
23        A.  Okay.
24        Q.  Can you turn to what has been Bates stamped
25   as LVNV073?
```

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
1         A.   Okay.

2         Q.   Can you tell me what this document is?

3         A.   This document appears to be a summons

4    issued for LVNV Funding versus Virginia Torres in

5    the court of Cook County, Illinois.

6         Q.   Have you ever seen this document before?

7         A.   I saw it in the exhibits that you provided

8    shortly before the deposition.

9         Q.   Can you look down at this document to the

10   name that says Blatt?  Are you there?  It says

11   Blatt, Hasenmiller, Leibsker & Moore, LLC?

12        A.   Yes, ma'am.

13        Q.   Can you tell me who Blatt, Hasenmiller,

14   Leibsker & Moore, LLC, is?

15        A.   It's a law firm in Chicago.

16        Q.   I'm going to say "Blatt" for short when

17   referring to this firm.  Is that okay?

18        A.   Yes, that's fine.

19        Q.   Do you know the relationship between Blatt

20   and LVNV Funding?

21        A.   The only relationship was Resurgent would

22   have retained Blatt to represent LVNV Funding in

23   this particular case.

24        Q.   Would Resurgent have authorized Blatt to

25   file this lawsuit?
```

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
 1        A.  Yes, ma'am.  If Resurgent would have sent
 2   it to Blatt and Blatt felt like they could sue on
 3   this account, that would have been through
 4   Resurgent.
 5        Q.  Can you turn to what has been Bates stamped
 6   as LVNV074?
 7        A.  074?
 8        Q.  Uh-huh.  074.
 9        A.  Okay.  I have it.
10        Q.  Can you tell me what this document is?
11        A.  It's a complaint for LVNV Funding versus
12   Virginia M. Torres.
13        Q.  Do you know if Resurgent reviews complaints
14   or a stay for complaints such as the one in front of
15   you before -- before it allows the -- before it
16   allows its attorney to file the case?
17        MR. FOSTER:  Object to the form.
18             BY THE WITNESS:
19        A.  What you mean by reviews?
20        Q.  Does LVNV or its servicer ever look at
21   these complaints before they are actually filed?
22        A.  I'm not sure if anyone looked at this
23   complaint before it was filed.  Resurgent would seek
24   legal representation through Blatt and a
25   determination would be made after that to file the
```

1  complaint.

2      Q.  But, Resurgent would never look at the

3  complaint before it was filed?

4      MR. FOSTER:  Object to the form.

5          BY THE WITNESS:

6      A.  It's -- going back in hindsight, I can't

7  tell you if anybody, or who they would have been at

8  Resurgent that would have reviewed the complaint,

9  but they would have given the information on the

10  account over to the law firm and then a decision

11  would be made on whether or not to file suit.

12      Q.  Okay.  How did Resurgent communicate with

13  Blatt?

14      MR. FOSTER:  Object to the form.

15          BY THE WITNESS:

16      A.  Communicate -- I guess, what information

17  are you asking?

18      Q.  Well, I'm asking how did Blatt and

19  Resurgent, you know, talk to each other; if there

20  was a problem or if they wanted to talk about a

21  certain account, how would that take place?

22      A.  Communication can come in really every kind

23  of source that we currently have.  It could be by

24  fax, or email, or a phone call.  We also -- a good

25  part of our communication is done electronically.

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
1   Our systems talk to each other and recognize certain

2   information and status codes to relay information

3   back and forth.

4        Q.  Now, going back, breaking down what you

5   just said, you said your systems.  What systems do

6   you use to talk to -- what systems did you use to

7   talk to Blatt?

8        A.  Resurgent has created a system called AMCS.

9        Q.  AMCS?

10       A.  Yes, ma'am.

11       Q.  Okay.

12       A.  And the report that we looked at on Exhibit

13  C is the report from AMCS, and I don't know what

14  Blatt uses, but Blatt's system has to be compatible

15  with our system in order to receive and send

16  information.

17       Q.  So, if a problem occurred -- if Blatt had a

18  problem or a -- if Blatt had a question concerning

19  one of the accounts that was placed with it by

20  Resurgent, Blatt could communicate with Resurgent

21  through AMCS?

22       A.  That would be one of the ways.  Yes, ma'am.

23       Q.  Was AMCS in place when Ms. Torres' account

24  was placed with Blatt?

25       A.  I am not sure what version of AMCS this is
```

30(b)(6)

 1   or what version might have operated at that time.

 2   There's always been some electronic version, whether

 3   it was called AMCS or something earlier.  I guess

 4   each version has maybe been created to add different

 5   abilities as we grow in technology, so I'm not sure

 6   if it was even called AMCS then, but there was

 7   electronic sharing of information back and forth

 8   even then.

 9        Q.  Can you turn to what is Bates stamped as

10   LVNV078?

11        A.  Okay.  I have it.

12        Q.  Can you tell me what this document is?

13        A.  It appears to be a trial call order in the

14   LVNV funding versus Virginia M. Torres case.

15   Granting of judgment.

16        Q.  Have you seen this document before?

17        A.  Yes, ma'am.

18        Q.  When did you see this document?

19        A.  It's in our records in prepping for the

20   deposition.

21        Q.  Well, prior to that, had you ever seen this

22   document before?

23        A.  I don't believe so.

24        Q.  Would this type of document be kept in Ms.

25   Torres' file?

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

1     A.  Yes, ma'am.

2     Q.  Why would it be kept in Ms. Torres' file?

3     A.  Because it's a document pertaining to Ms.

4  Torres' account.

5     Q.  Are all documents pertaining to Ms. Torres'

6  account stored or kept in Ms. Torres' file?

7     MR. FOSTER:  Object to the form.

8        BY THE WITNESS:

9     A.  Any document we receive on behalf of a

10  consumer is kept in our document repository.

11     Q.  You said, "document repository"?

12     A.  Uh-huh.  Yes, ma'am.

13     Q.  What is that?  What is a document

14  repository?

15     A.  It's just the section of the software

16  system that holds documents.

17     Q.  Does Blatt have access to the document

18  respor -- I'm saying it wrong -- to that system?

19     A.  No, ma'am.

20     Q.  How would Resurgent retain this -- get this

21  type of document from Blatt?

22     A.  Blatt would forward us this document.

23     Q.  How would Blatt forward you this document?

24     A.  Blatt could upload it to an FTP site, I'm

25  not sure if that was available in 06.  Or they could

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
 1   have faxed it in to us or they could have sent it by

 2   mail, which is somewhat slower, but any of those

 3   means of communication.

 4       Q.  Now, did Resurgent require Blatt to send

 5   all documents pertaining to an account?

 6       A.  No, ma'am.  Not all documents.

 7       Q.  Which documents did Blatt not -- I mean,

 8   which documents did Resurgent not require to be

 9   forwarded to Resurgent?

10       A.  I'm not sure, back in '06.  That's

11   something I'd have to check on.

12       Q.  Would Resurgent require this trial court

13   order to be forwarded to it by Blatt?

14       A.  I believe so, because it created a judgment

15   in the record that the court maintained, so it would

16   be a significant change to the account.

17       Q.  So, significant changes to the account were

18   required to be forwarded to Resurgent?

19       MR. FOSTER:  Object to the form.

20           BY THE WITNESS:

21       A.  Those are my words, that's -- I'm saying

22   that since there was a significant change, there was

23   now a judgment that existed on the account.

24   Resurgent doesn't use the terminology of "a

25   significant change."
```

30(b)(6)

1    Q.  You're saying that you're not quite -- you

2  said you're not sure what documents are required to

3  be forwarded to Blatt at this time -- I mean, to be

4  forwarded to Resurgent at this time.  Is that

5  correct?

6    MR. FOSTER:  Object to the form.

7         BY THE WITNESS:

8    A.  Well, certainly back in 2006, I can't sit

9  here today and tell you yes or no on certain

10  specific documents.  If Blatt would have sent a

11  notice to the consumer, Resurgent would ask that

12  Blatt maintain that record themselves in their own

13  file.  They wouldn't have to send that record in to

14  Resurgent, but there would be an expectation and a

15  requirement that Blatt keep that in their files in

16  case Resurgent ever needed to see it.

17    Q.  Can you turn to what is Bates stamped as

18  LVNV079?

19    A.  079?

20    Q.  Uh-huh.

21    A.  Okay.  I have it.

22    Q.  Have you seen this document before?

23    A.  Yes, ma'am.

24    Q.  Are you familiar with this document?

25    A.  Yes, ma'am.

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

1     Q.  Can you tell me what this document is?

2     A.  This is a letter dated September 24th,

3  2013, from the Debtors Legal Clinic by facsimile to

4  Blatt Hasenmiller from a Michael J. Wood.

5     Q.  Can you tell me -- can you tell me what

6  case this document is referring to?

7     A.  Yes, ma'am.

8     Q.  What case is it referring to?

9     A.  LVNV Funding, LLC, versus Virginia Torres

10  in Cook County court number 05-M1 or ML-192307.

11     Q.  Now, can you tell me if it's referencing

12  the same -- can you tell me if this letter is

13  referring to the complaint that is Bates stamped as

14  LVNV074?

15     A.  In reviewing them, it appears it does.

16     Q.  Can you tell me if this document was

17  received by Blatt?

18     A.  No, ma'am.

19     Q.  You can't tell me if this document was

20  received by Blatt?

21     A.  I see a stamp that says, "Received by

22  BHLM," I can assume that it was received by Blatt.

23     Q.  You can assume that it was received by

24  Blatt because it says, "Rec'd September 24th of

25  2013"?

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
 1        A.  Yes, ma'am, by the stamp at the bottom.
 2        Q.  Would Blatt have been required to forward
 3   this letter to Resurgent?
 4        A.  I'm not -- Resurgent would have expected
 5   Blatt to give us this information that is contained
 6   in this letter, yes.
 7        Q.  When you say -- when you say, "Resurgent
 8   would have expected Blatt to give you the
 9   information contained in this letter, what
10   particular information would Resurgent have
11   expected?
12        A.  Well, the letter advises that the Debtors
13   Legal Clinic represents Virginia Torres in this
14   case.  Resurgent would have expected if there was an
15   attorney representing the consumer, that that
16   information would be forwarded back to Resurgent.
17        Q.  Is there a reason why Resurgent would have
18   expected this type of information?
19        A.  Yes, ma'am.
20        Q.  What reason is that?
21        A.  It's important that the company knows when
22   someone is represented by a lawyer.
23        Q.  Why is it important?
24        A.  Because Resurgent manages and services the
25   account for debt collection, and there's no
```

**30(b)(6)**

1   communication with the consumer anymore, the

2   communication is done through the attorney.

3       Q.  So, Resurgent needs this type of

4   information to know who to communicate with in

5   regards to the account that it has?

6       A.  Yes, ma'am.  It would need to.

7       Q.  Did Blatt ever forward this letter to

8   Resurgent?

9       A.  No, ma'am.

10       Q.  When did Resurgent learn that this letter

11   existed?

12       A.  I believe Resurgent learned of the

13   existence of this letter upon the filing of your

14   lawsuit.

15       Q.  If Blatt had forwarded this letter to

16   Resurgent, what would Resurgent have done?

17       A.  Resurgent would have noted the attorney

18   representation for Ms. Torres.

19       Q.  How would resurgent have done that?

20       A.  Well, Resurgent would have put it into the

21   AMCS system and that system would have kept the

22   information that the debtor or the consumer had an

23   attorney and listed the attorney information within

24   it.

25       Q.  But since Blatt never forwarded this letter

30(b)(6)

 1    to Resurgent, it was never put into the AMCS system?

 2         A.  Yes, ma'am.

 3         Q.  Can you turn to what is Bates stamped, I

 4    mean, I'm sorry, can you turn to what's been marked

 5    as Exhibit A?

 6         A.  Okay.

 7         Q.  Can you tell me what this document is?

 8         A.  This document looks to be the complaint

 9    that Ms. Torres filed in the U. S. District Court

10    for the Northern District of Illinois, Virginia

11    Torres versus LVNV Funding, LLC, and Nations

12    Recovery Center, Inc.

13         Q.  Have you seen this document before?

14         A.  Yes, ma'am.

15         Q.  Are you familiar with this document?

16         A.  A little bit.

17         Q.  A little bit?  Okay.  Did you have a chance

18    to review the document before this deposition?

19         A.  Yes, ma'am, I did.

20         Q.  All right.  So, if you could go to -- Can

21    you go to Exhibit I of Exhibit A?

22         A.  Okay.  I have it.

23         Q.  Can you tell me what this document is?

24         A.  It is a letter from the Debtors Legal

25    Clinic.  This one is dated October 20th, 2013, to

30(b)(6)

```
 1   Andrews and Cox, doing business as Bleecker, Brody
 2   and Andrews.
 3       Q.  Do you know what case this letter is
 4   referencing?
 5       A.  It looks to be the same case.  LVNV Funding
 6   versus Virginia Torres.
 7       Q.  Can you tell me the relationship between
 8   Bleecker, Brody and Andrews?  I'll refer to them as
 9   Bleecker from now on.  Is that okay?
10       A.  That's fine.
11       Q.  Can you tell me the relationship between
12   Bleecker and LVNV Funding?
13       A.  Bleecker was retained to represent LVNV
14   Funding.
15       Q.  Can you tell me when Bleecker was retained
16   to represent LVNV Funding?
17       A.  Probably not without looking at the AMCS
18   report, however, it would have been after judgment.
19       Q.  Do you want to take a look at Exhibit C to
20   see exactly when Beecker was retained to represent
21   LVNV Funding?
22       A.  Certainly.  It would have been sometime
23   after 2010.
24       Q.  Sometime after 2010?
25       A.  Yes, ma'am.
```

30(b)(6)

```
 1        Q.  All right.  Earlier, you testified that it
 2   would have been after default.  How did you know
 3   that Bleecker was retained after default?
 4        A.  No, I believe I said after judgment.
 5        Q.  Okay.
 6        A.  If that's the same.
 7        Q.  All right.  No, they're different, so how
 8   did you know that Bleecker was retained after
 9   judgment?
10        A.  Because in the judgment, Blatt was the
11   attorney of record for the collection action.
12   Bleecker was retained for collection on the
13   judgment.
14        Q.  Okay.  So, Resurgent retained -- so far,
15   Resurgent retained two attorneys to collect on this
16   account, on Ms. Torres' account?
17        A.  Yes.  Resurgent had retained Blatt on the
18   collection case and later Bleecker had been retained
19   for collection on the judgment.
20        Q.  Does Resurgent usually retain two attorneys
21   to handle an account, one prior to judgment and one
22   after judgment?
23        A.  They can sometimes use different law firms
24   for different actions.
25        Q.  Can you tell me if Bleecker ever -- can you
```

30(b)(6)

```
 1   tell me how Bleecker communicated with Resurgent?

 2   Was it the same way that Blatt did, through AMCS?

 3   Through that system?

 4        A.  Bleecker could have provided information by

 5   facsimile, by email, by phone or through electronic

 6   records.

 7        Q.  When you say, "electronic records," are you

 8   talking about the AMCS system?

 9        A.  Yes, Bleecker could have provided

10   information that could have been uploaded to the

11   AMCS system.

12        Q.  Do you know if Bleecker ever -- do you know

13   if Bleecker received this document, this letter?

14        A.  I do not know if Bleecker received this

15   letter.  No, ma'am.

16        Q.  Do you know if Bleecker -- can you tell me

17   if Bleecker ever forwarded this letter to LV -- to

18   Resurgent?

19        A.  Resurgent did not have this letter in their

20   system.

21        Q.  Would Resurgent have expected Bleecker to

22   forward this letter to it?

23        A.  Resurgent -- yes, they would have expected

24   to either receive the letter or the information

25   contained in the letter.
```

30(b)(6)

```
 1      Q.  Now what is the information contained in
 2  the letter?
 3      A.  That the Debtors Legal Clinic represents
 4  Ms. Torres in the LVNV Funding versus Virginia
 5  Torres case.
 6      Q.  Resurgent would have expected this
 7  information or this letter so it would have known
 8  that Ms. Torres was represented by an attorney.  Is
 9  that a fair statement?
10      A.  That would be fair.  Yes, ma'am.
11      Q.  What would Resurgent have done if they had
12  received this letter?
13      A.  If Resurgent would have received an
14  attorney representation letter, Resurgent would have
15  notated that information within AMCS and would have
16  notated that the consumer was represented by an
17  attorney.
18      Q.  Is this letter an attorney representation
19  letter?
20      MR. FOSTER:  Object to the form of the question.
21          BY THE WITNESS:
22      A.  Well, I can say that this letter says that
23  Ms. Torres is represented by the Debtors Legal
24  Clinic.
25      Q.  Would you have coded this -- would
```

1    Resurgent have coded this letter as an attorney

2    representation letter?

3         A.  Yes, ma'am.  They would have.  I shouldn't

4    say, "they."  We would have.

5         Q.  Can you turn to Exhibit J of Exhibit A?

6         A.  Okay.

7         Q.  Can you tell me what this document is?

8         A.  It is a notice of electronic filing in the

9    Circuit Court of Cook County for LVNV Funding versus

10   Virginia Torres.

11        Q.  If you turn to the second page of Exhibit J

12   of Exhibit A -- are you there?

13        A.  Yes, ma'am.

14        Q.  Can you tell me what this document is?

15        A.  It says, "Appearance and Jury Demand."

16        Q.  Do you know who the appearance is being

17   filed?  Can you tell?

18        A.  It says, "the undersigned enters the

19   appearance of Torres, Virginia M.; Rodriguez,

20   Virginia by the Debtors Legal Clinic.

21        Q.  Does Resurgent Capital usually receive

22   electronic filing of -- on accounts that they have

23   placed with collectors?

24        MR. FOSTER:  Object to the form.

25             BY THE WITNESS:

TONYA HENDERSON on 01/25/2017

30(b)(6)

```
 1         A.  I mean, if our law firm -- if the law firm
 2    representing LVNV sends it to us, we would have it.
 3         Q.  Can you go to page five of Exhibit J?
 4         A.  Okay.
 5         Q.  Is this another -- can you tell me what
 6    this document is?
 7         A.  It's a notice of electronic filing in the
 8    LVNV Funding versus Torres, Virginia case.
 9         Q.  Can you -- if you turn -- can you turn to I
10    think page 6 of Exhibit J?
11         A.  Yes, ma'am.
12         Q.  Actually, can you turn to page, I think --
13    turn to the next page.  I think it's page 7.
14         A.  Okay.
15         Q.  Can you tell me what this is?
16         A.  It's in the LVNV Funding, Virginia Torres
17    case.  It's a 298 certification for waiver of fees,
18    representation by civil legal services provider
19    report, sponsor pro-bono program.
20         Q.  Can you read -- can you read the
21    information right after that, it says, "Pursuant,"
22    starts with, "Pursuant"?
23         A.   "Pursuant to Supreme Court Rule 298, the
24    undersigned counsel hereby certifies that she or he
25    is an attorney for the Debtors Legal Clinic, and it
```

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
 1    is a civil legal services provider or court
 2    sponsored pro-bono program as defined in 735ILCS5/5-
 3    105.5A, and that Debtors Legal Clinic has made the
 4    determination that Torres, Virginia M., has income
 5    of 125 percent or less of the current official
 6    poverty guideline or is otherwise eligible to
 7    receive services under the eligibility guidelines of
 8    the civil legal services provider or court sponsored
 9    pro-bono program."
10         Q.   Okay.
11         A.   Do you want me to keep going?
12         Q.   Yes.
13         A.   "As a result, under Supreme Court Rule 298,
14    Torres, Virginia M., is eligible to sue or defend
15    without payment of fees, costs or charges as defined
16    at 735ILCS5/5-105 subsection A, subsection 1,
17    electronically signed by Andrew Finko, F-i-n-k-o,
18    attorney certification."
19         Q.   Can you tell me when this was filed?
20         MR. FOSTER:  Object to the form.  I don't think
21    this is a document that --
22         MS. CHATMAN:  At the top it says,
23    "electronically filed."
24         MR. FOSTER:  But she has no knowledge of that,
25    Celetha, you know, this is not anything that they
```

```
 1   would know.  It's a court record.  If you want her
 2   to read what she can read off the document, I guess,
 3   but I object to the form of the question.  You're
 4   asking her if she knows when this was filed, and I'm
 5   just saying that it's beyond the foundation.
 6       MS. CHATMAN:  Okay.  This is a lawsuit that LVNV
 7   filed, so I'm asking their representative about the
 8   document that it directs its attorneys to file on
 9   its behalf.
10       MR. FOSTER:  No, Celetha, if you look at the
11   document, this is a document that was not filed by
12   anyone representing LVNV, but by someone by the name
13   of Andrew Finko.  If you want to know who -- when
14   this was filed, that's a thing you need to ask
15   Andrew Finko because that's the person whose name is
16   on this document.
17       MS. CHATMAN:  Okay.  I'm asking about the case
18   which LVNV directed its attorney to file, about
19   documentation.  If LVNV sues consumers, then they
20   need to know what's going on in the cases that they
21   sue on.
22       MR. FOSTER:  Celetha, my objection is that
23   you're asking her about when this document was filed
24   and I'm telling you, the witness here and the
25   defendant here, they do not have the foundation to
```

30(b)(6)

1   know when, in fact, Mr. Finko, when he allegedly

2   filed this document.  That's my only point.

3        MS. CHATMAN:  Okay.  I'm just asking her -- it

4   says at the top that it was electronically filed.

5   I'm asking her to say the date.

6             BY THE WITNESS:

7        A.  The date under the -- I'm sorry?

8        MR. FOSTER:  Go head, you can read from the

9   document.

10            BY THE WITNESS: (Continuing)

11       A.  Yes, the document says, "electronically

12   filed on February 3rd, 2015."  There is a filed at

13   the top in '16.  I don't know what that means.

14       Q.  Would Resurgent ever have received this

15   type of document?

16       MR. FOSTER:  Object to the form of the question.

17            BY THE WITNESS:

18       A.  Well, that's kind of hard to say.

19   Resurgent receives lots of documents from their

20   attorneys.

21       Q.  What type of documents does Resurgent

22   usually receive from its attorneys?

23       MR. FOSTER:  Object to the form.

24            BY THE WITNESS:

25       A.  I mean, it truly can be anything.  It could

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
 1    be liens, or discovery or just anything the attorney

 2    forwarded for Resurgent to maintain -- or, not to

 3    maintain, but to hear, "this is what's going on, on

 4    the account."

 5         Q.  Okay.  Can you go to Exhibit K of Exhibit

 6    A?

 7         A.  Okay.

 8         MR. FOSTER:  There is no Exhibit K to Exhibit A.

 9    Maybe it got separated?  The last one we have is J.

10             BY THE WITNESS: (Continuing)

11         A.  Wait.  Here's K -- H, I, J, K.

12         MR. FOSTER:  Oh wait, sorry, there it is.

13             BY THE WITNESS: (Continuing)

14         A.  Oh, K's before J.

15         Q.  Yeah.  I think K is small.

16         A.  Okay.

17         Q.  Are we at K?

18         A.  I believe so.

19         Q.  Have you seen this document before?

20         A.  I've seen this document -- yes, with this

21    complaint.

22         Q.  Okay.  You haven't seen the document any

23    other time?

24         A.  I do not believe so.

25         Q.  Did you have a chance to review this
```

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
 1   document before today's deposition?
 2        A.  I did, yes.
 3        Q.  Can you tell me what this document is?
 4        A.  It is a transmittal letter from Miller and
 5   Steeno, P.C., in the LVNV Funding, Virginia Torres
 6   case, dated February 16th of 2015.
 7        Q.  Can you tell me who Miller and Steeno,
 8   P.C., is?
 9        A.  They're a law firm that was retained to
10   collect on the judgment for this account.
11        Q.  When was Miller and Steeno retained to
12   collect on the judgment?
13        A.  I believe somewhere around 2014.
14        Q.  Is this the second firm that retained to
15   collect on the judgment on this account?
16        A.  I believe so.
17        Q.  Now, who did Miller and Steeno send this
18   letter to?
19        A.  It is directed to Andrew Finko.
20        Q.  Can you tell me the date that they sent it?
21        A.  Certainly.  February 16th, 2015.
22        Q.  Can you tell me what the letter says?  Can
23   you read that out loud?
24        A.  Yes.  "It is my understanding that you are
25   going to represent Virginia M. Torres in the above
```

30(b)(6)

1  referenced matter.  Please let me know your position

2  in this matter and if we can reach some sort of

3  amicable resolution."

4        Q.  Do you know why Miller and Steeno sent this

5  letter to Andrew Finko?

6        A.  No, ma'am.

7        Q.  No?  Okay.  Did Resurgent ever authorize

8  Miller and Steeno to communicate with Andrew Finko?

9        MR. FOSTER:  Object to the form.

10            BY THE WITNESS:

11       A.  Well, Resurgent had no knowledge of Andrew

12  Finko at this time, but the account --

13       Q.  I -- I'm sorry.  You can continue.

14       A.  The account was with Miller and Steeno for

15  collection on the judgment.

16       Q.  But you aren't sure how Miller and Steeno

17  knew to contact Andrew Finko?

18       A.  I don't -- I'm not aware of how Miller and

19  Steeno knew to contact Andrew Finko.

20       Q.  Is it fair to say that Miller and Steeno

21  acknowledged that Mr. Finko was representing Ms.

22  Torres in this matter?

23       A.  I think it's fair to say the letter speaks

24  for itself.

25       Q.  So, what does that mean?

30(b)(6)

1      A.   That it says it's their understanding that

2  Mr. Finko was going to represent Ms. Torres.

3      Q.   Okay.  I am going to take a ten-minute

4  break.  We're at the hour mark, so I'm going to take

5  a ten-minute break.

6  (OFF RECORD)

7           BY MS. CHATMEN:  (Continuing)

8      Q.   If I could draw your attention back to

9  Exhibit K of Exhibit A?

10     A.   Okay.

11     Q.   Did Miller and Steeno, P.C., ever inform --

12 ever inform Resurgent that Ms. Torres was

13 represented by an attorney?

14     A.   No, ma'am.

15     Q.   Would you have expected -- would Resurgent

16 have expected Miller and Steeno, P.C., to inform it

17 of Ms. Torres' representation by counsel?

18     A.   Yes, ma'am.

19     Q.   If Miller and Steeno had informed Resurgent

20 that Ms. Torres was represented by counsel, what

21 would have happened?  What would Resurgent have

22 done?

23     A.   One thing Resurgent would have done would

24 have been to notate that in the AMCS system.  The

25 debtor name tab would also reflect attorney

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

1   information.

2        Q.  Would Resurgent have done anything else?

3        A.  There are other indicators in AMCS.  A note

4   could have been placed in the system along with a

5   status code that indicated that there was an

6   attorney -- there's other flags and things in the

7   system that could have notated that there was a

8   debtor attorney.

9        Q.  What other flags in the system, beside,

10  like a note?

11       A.  Well, there are status codes.  The status

12  code of ATT is when a consumer is represented by an

13  attorney; and Miller and Steeno, if they had

14  contacted by phone or facsimile or received this

15  letter, someone on behalf of Resurgent, when they

16  received it, would have put the account into that

17  code.

18       Q.  Does Resurgent review -- does Resurgent

19  review any letters that Miller and Steeno sends out

20  to consumers?

21       A.  I'm not aware of any that they would

22  review, that an attorney would write.  No, ma'am.

23       Q.  If you could go back to Exhibit B?  Leave

24  Exhibit K out.

25       A.  What was the other Exhibit?

30(b)(6)

1      Q.  K.  Exhibit K of Exhibit A.

2      A.  Okay.

3      Q.  For the record.  If you -- in looking at

4  Exhibit B, if you could --

5      MR. FOSTER:  Is that B as in boy?  I'm sorry. Is

6  that B as in boy?

7      MS. CHATMAN:  No.  D as in dog.  Exhibit D.  I'm

8  sorry.

9          BY THE WITNESS:

10     A.  Okay.

11     Q.  If you can go to what is Bates stamped as

12  LVNV079?

13     A.  Okay.  I have it.

14     Q.  Do you know why Blatt never forwarded this

15  letter to Resurgent?

16     A.  No, ma'am.

17     Q.  If you can go to -- if you can go to,

18  sorry, if you can go to Exhibit I of Exhibit A?

19     A.  I believe I'm there.

20     Q.  Do you know why Bleecker never forwarded

21  this letter to Resurgent?

22     A.  No, ma'am.

23     Q.  Now, let's go back to Exhibit K of Exhibit

24  A.

25     A.  Okay.

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

1      Q.  Does Resurgent require Miller and Steeno to
2  notate when it talks to an attorney in regards to a
3  consumer account that's been placed with it?
4      MR. FOSTER:  Object to the form.
5          BY THE WITNESS:
6      A.  I'm sorry.  Can you say that again?
7      Q.  Sure.  I'll try to rephrase.  Does
8  Resurgent require its attorneys to notate when they
9  speak to consumer attorneys?
10     MR. FOSTER:  Object to the form.
11         BY THE WITNESS:
12     A.  I guess it would really mean, what you mean
13  by notate.  Resurgent expects for its lawyers and
14  its services to comply and follow all laws, whether
15  they be state, federal, local.  Any contact with a
16  consumer in finding out they have an attorney and
17  you're aware of that, that is something that we
18  would expect -- information we would expect to be
19  sent back to us.
20     Q.  Are there any procedures or policies that
21  Resurgent gives its attorneys to follow when
22  handling its accounts?
23     A.  There can be.
24     Q.  What are -- when are -- okay, what are
25  those policies that are made, or -- scratch that --

30(b)(6)

1    when does Resurgent give its attorneys policies and

2    procedures?

3         A.  All the attorneys or all the servicing

4    firms, the law firms that work on behalf of

5    Resurgent can have policies and procedures related

6    to any aspect of the case.  A lot of it is just how

7    to communicate how the electronic system works with

8    the communications back and forth.

9         Q.  So, if -- I'm trying to understand.  If I'm

10   understanding you correctly, Resurgent does have

11   policies and procedures that it gives its attorneys

12   or it doesn't?

13        A.  It does.

14        Q.  Do you know if it gave Miller and Steeno

15   any policies and procedure?

16        A.  I know that Miller and Steeno would have --

17   anything that we would produce to our attorneys, we

18   would produce to Miller and Steeno.

19        Q.  I don't -- I guess I don't -- when you say,

20   "anything that Resurgent has," what do you mean?

21        A.  Well, I guess -- and I don't want to

22   confuse the thing -- Resurgent would not tell Miller

23   and Steeno how to practice law within the lawsuit.

24   We retain them because they're professional and

25   they're licensed in their jurisdiction to handle all

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
 1   matters of the law, however, when you're relaying
 2   information back and forth and also different people
 3   in the company that you could contact, there are
 4   policies and procedures in doing that and Resurgent
 5   makes sure that all of its servicers and its firms
 6   have those policies and procedures.
 7        Q.  So, would Bleecker have gotten those
 8   policies and procedures?
 9        A.  Bleecker should have been aware of any of
10   those policies and procedures.
11        Q.  What about Blatt?  Would they have been
12   aware?
13        A.  Yes, ma'am.
14        Q.  Are they made aware when the account -- are
15   they -- are your -- scratch that.  Is Resurgent's
16   attorneys made aware of these policies and
17   procedures when the accounts are first placed with
18   them?
19        A.  Yes, ma'am.  They should all have that
20   information.
21        Q.  Is that information called a certain thing?
22        A.  It can be, I mean, we have attorney
23   information that we put together.  There's also
24   memos if things come in different jurisdictions that
25   come up that change, where maybe the law firm or an
```

30(b)(6)

 1  agency has reached back to us and said, "Hey, we've

 2  had this happen, what would you like us to do," so

 3  there could be memorandums back and forth.

 4      Q.  Can you tell me the relationship between

 5  Resurgent and Nations Recovery Center, Incorporated,

 6  who I'll refer to as NRC?

 7      A.  Besides Resurgent -- there is no

 8  relationship besides NRC was retained to collect on

 9  the judgment.

10      Q.  Would NRC have been the third firm retained

11  to collect on a judgment of Ms. Torres' account?

12      MR. FOSTER:  Object to the form of the question.

13          BY THE WITNESS:

14      A.  I'm not really sure if they were only the

15  third, but they were one of the agencies to collect

16  on the account after the judgment.

17      Q.  How many agencies were retained to collect

18  on the judgment?

19      A.  I'm not sure, sitting here today.

20      Q.  Could you tell from your account notes?

21      A.  No, ma'am.  I believe we've named all of

22  them, but I just can't say with 100 percent sure.

23      Q.  But you will say that Bleecker was retained

24  to collect after the judgment, Miller was retained

25  to collect after the judgment, and Nations was

30(b)(6)

```
 1   retained or NRC was retained to collect after the
 2   judgment as well.  Right?
 3        MR. FOSTER:  Object to the form of the question.
 4   Misstates her testimony.
 5             BY MS. CHATMAN: (Continuing)
 6        Q.  Okay.  Was Bleecker retained by Resurgent
 7   to collect after the judgment on Ms. Torres'
 8   account?
 9        A.  Bleecker was retained on behalf of
10   Resurgent to collect on Ms. Torres' account after
11   judgment.
12        Q.  Was Miller retained by Resurgent to collect
13   on Ms. Torres' behalf after the judgment?
14        A.  Miller and Steeno was retained to collect
15   on the account after the judgment.
16        Q.  Was NRC retained to collect on Ms. Torres'
17   account after the judgment?
18        A.  Yes.
19        Q.  So, you just testified that that was three
20   different agencies hired to retain on Ms. Torres'
21   account after the judgment.  Is that correct?
22        MR. FOSTER:  Objection to the form.  Misstates
23   her testimony.  I think, Celetha, what you're
24   leaving out is the timeframe.  Your question seems
25   to make it seem like all these were retained at the
```

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
 1   same time.  If you could clarify your question
 2   regarding the timeframe, I think you'll find out
 3   that each one of these was retained at separate
 4   times over a period of time and that would probably
 5   move this along.
 6            BY MS. CHATMAN: (Continuing)
 7       Q.  When was NRC retained to collect on Ms.
 8   Torres' account after the judgment?
 9       A.  Let me review the records just to be --
10       Q.  Okay.
11       A.  They would have been retained around
12   February 2016.
13       Q.  February 2016?
14       A.  '16, yes, ma'am.
15       Q.  Do you know how Resurgent determines which
16   agency it places accounts with?
17       A.  I believe that's handled by some system
18   logic that's placed into the -- that's placed into
19   the electronic system by our data management team.
20       Q.  Was Resurgent aware of Ms. Torres'
21   representation by counsel when it placed her account
22   with NRC?
23            MR. FOSTER:  Object to the form.
24            BY THE WITNESS:
25       A.  No, ma'am.  Resurgent was not aware of who
```

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
 1   Ms. Torres' counsel -- that there was counsel
 2   currently representing Ms. Torres when we placed the
 3   account with NRC.
 4        Q.  Do you know if Resurgent would have placed
 5   Ms. Torres's account with NRC if it had known of
 6   attorney representation?
 7        A.  I am personally not sure if NRC has
 8   attorneys working.  I find it doubtful that
 9   Resurgent would have placed it with someone that was
10   not an attorney when there was an attorney on the
11   other side.
12        Q.  So you're saying it's doubtful that they
13   would have placed it with NRC if they had known?
14        A.  Yes, ma'am.  Sitting here today.  Usually
15   when a consumer is represented by an attorney, we
16   want the account placed with another law firm so our
17   attorney can speak with their attorney.
18        Q.  And it's your understanding that NRC is not
19   a law firm?
20        A.  If they're a law firm, I'm just not aware
21   of it.  That's my understanding today.  I'm not
22   sure.
23        Q.  Do you know why Ms. Torres' account was
24   placed with NRC?
25        A.  For collection on the judgment.
```

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

1    Q.   Does Resurgent have any policies in place

2  to ensure that accounts with attorney representation

3  are placed with law firms?

4    A.   That is the policies and procedures of

5  Resurgent.  When a consumer retains an attorney,

6  Resurgent will place it with an attorney in that

7  jurisdiction that can speak to the legal aspects of

8  the case.

9    Q.   Now, is that somewhere in any type of

10  manual, that procedure that you just talked about?

11    A.   I would have to check and see.

12    Q.   Do you know if those procedures were in

13  place when Ms. Torres' account was placed with NRC?

14    A.   Yes, ma'am.

15    Q.   Were they in place?

16    A.   Yes, ma'am.

17    Q.   How do you know they were in place?

18    A.   Just because I work with those policies and

19  procedures every day and that was only eleven months

20  ago.  I've been at Resurgent for -- going on six

21  years and they've been in place that long.

22    Q.   Can we turn to what has been marked as --

23  actually no, let's go back.  Did Resurgent authorize

24  NRC to place phone calls to Ms. Torres?

25    MR. FOSTER:   Object to the form.

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
 1              BY THE WITNESS:

 2      A.  Resurgent authorized NRC to have the

 3  account to collect on judgment.

 4      Q.  Does that include the authority to call --

 5  to place calls to Ms. Torres?

 6      A.  I'm not sure what "authority" means.  They

 7  were retained as third parties to review the account

 8  and see if collection could be made on this

 9  judgment.

10      Q.  How do they see if collection could be made

11  on the judgment?

12      MR. FOSTER:  Object to the form.

13              BY THE WITNESS:

14      A.  I'm not sure.  That would be on NRC.

15      Q.  Do you know whether NRC called Ms. Torres?

16      A.  My understanding is that they did.

17      Q.  Did Resurgent give them the right to call

18  Ms. Torres?

19      MR. FOSTER:  Object to the form of the question.

20  Asked and answered.

21              BY THE WITNESS:

22      A.  I'm not really sure how to answer that.

23  I'm not sure that -- Resurgent placed the account

24  with NRC to see if collection could be made on the

25  judgment.
```

1       Q.   I guess I'm not understanding.  You keep

2    saying, "to determine whether collection could be

3    made on this judgment," but what type of things are

4    done to determine whether or not collection can be

5    made on the judgment?  Like, what do you mean by

6    that?

7       A.   Well, I mean that Resurgent would place the

8    account and if NRC looked at the judgment and for

9    some reason felt like it wasn't something that they

10   -- was in their jurisdiction or an account that they

11   didn't want to work, they could always have the

12   right to say, no, they didn't want to work that

13   account.  They didn't want to be hired.

14      Q.   Now, how does -- do you -- how does NRC

15   work an account?

16      MR. FOSTER:  Object to the form.  Lack of

17   foundation.

18          BY THE WITNESS:

19      A.   I don't know.  I've never worked for them.

20   I just know that they do have the right to be hired

21   to collect on the account, or they could turn down

22   an account.

23      Q.   But the right -- but you're not quite sure

24   what the right to collect on an account means, or

25   what that entails?

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
 1        MR. FOSTER:  Object to the form.

 2             BY THE WITNESS:

 3   A.  No.

 4   Q.  Do you know how NRC communicates with

 5   consumers?

 6   A.  No, ma'am.

 7   Q.  When you placed Ms. Torres' account with

 8   NRC, did Resurgent know if NRC was going to

 9   communicate with Ms. Torres?

10        MR. FOSTER:  Object to the form.

11             BY THE WITNESS:

12   A.  I think Resurgent believed that NRC could

13   take any action that they legally were able to take

14   in order to collect on the judgment.

15   Q.  Does Resurgent know what is legally

16   actionable?

17        MR. FOSTER:  Object to the form.

18             BY THE WITNESS:

19   A.  What does "legally actionable" mean?

20   Q.  I'm not sure.  You used -- those were your

21   words.

22   A.  Oh.  Well, by those words, I mean when

23   Resurgent retains, whether it's a servicing firm, a

24   collection agency or whether it's a law firm, we ask

25   that they comply with all laws, whether they be the
```

1   FDCPA, F -- probably not the FCRA, but TCPA,

2   whatever is required.  So, as any servicer on behalf

3   of Resurgent works an account, we expect them to

4   comply with all those laws.  So, when you asked did

5   we give them the right to call, only if it's legally

6   okay to call.  That was a decision they would have

7   to make at that point in time, "they" being, NRC.

8          Q.  How does NRC communicate with Resurgent?

9   Is it the same way that the other firms communicate

10  with Resurgent?

11         MR. FOSTER:  Object to the form.

12              BY THE WITNESS:

13         A.  NRC can use any of the same methods.

14         Q.  So, could NRC use the AMCS system?

15         MR. FOSTER:  Object to the form of the question.

16  Misstates the testimony.

17              BY THE WITNESS:

18         A.  Yes, NRC can't use AMCS software, but they

19  could have software that allows them to send files

20  encrypted that would support the AMCS and provide us

21  information.

22         Q.  Could NRC communicate with Resurgent via

23  email?

24         A.  Certainly.

25         Q.  Now, if NRC communicated with Resurgent in

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
 1   regards to Ms. Torres' account, where would those
 2   communications be?
 3         MR. FOSTER:  Object to the form.
 4              BY THE WITNESS:
 5         A.  It would just depend on what the
 6   communication was, but there should be some evidence
 7   of them within the AMCS system.
 8         Q.  Is there a reason communications wouldn't
 9   be stored in the AMCS system?
10         A.  No.
11         Q.  I would like to draw your attention to
12   Exhibit C, I think which you testified was a work
13   account note.
14         A.  Okay.
15         Q.  Now, if there was any type of communication
16   -- if NRC had communicated with Resurgent in regard
17   to Ms. Torres' account, would they be located in
18   this exhibit, or in these account notes, sorry?
19         A.  It should be.
20         Q.  It should be?
21         A.  Yes, ma'am.
22         Q.  So, from your review of this -- from your
23   review of these account notes, did NRC ever
24   communicate with Resurgent in regards to Ms. Torres'
25   account?
```

30(b)(6)

1          MR. FOSTER:  Object to the form.

2              BY THE WITNESS:

3          A.  Well, it's a little hard to say without

4    knowing what exact communication you would be --

5    without knowing what exact communication you're

6    speaking of.

7          Q.  Sure.  I guess I would be speaking of

8    attorney representation communication.

9          A.  Such as a letter?

10         Q.  A letter, a phone call, anything.  What

11   does a communication from NRC look like in these

12   account notes?  Can you show me?

13         A.  I will see if I can locate one.  There

14   could be a status code on page 32 of 55.

15         Q.  32?

16         A.  Yes, ma'am.

17         Q.  Where would that status code be at?  I'm

18   sorry, page 25 you said?

19         A.  It's LVNV032.

20         Q.  32, sorry.  Okay, I'm there.

21         A.  Under collection status history, the date

22   of February 19th, 2016, the LCO indicates that they

23   were starting legal collections.

24         Q.  Now, hold on one second.  You say the

25   "LCO," what is that?  I don't see that.  Show me

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
 1   where that is?

 2        A.  The second line down.  The date says

 3   February 19th, 2016?

 4        Q.  Uh-huh.

 5        A.  And it says, "LCO - Legal collection

 6   started?

 7        Q.  Uh-huh.

 8        A.  That would have been provided by a servicer

 9   or a logic change, and so the LJO above it on

10   February 24th, 2016, --

11        Q.  Uh-huh.

12        A.  -- would have come from the servicer that

13   they found -- that they see the legal -- not really

14   they found, they see the legal judgment that was

15   obtained on the account.  That's the only indication

16   I can find of any information from NRC.

17        Q.  How do you know that it's from NRC though?

18   Just, just -- I don't see anything that says NRC, so

19   how do you know?

20        A.  At the very end of the line on February

21   24th, the ap name is SUF, it's called a Servicer

22   Update File.

23        Q.  Okay.  You said after -- can you say that

24   again?

25        A.  On February 24th, 2016?
```

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
1        Q.   Uh-huh.

2        A.   The very last tab says SUF?

3        Q.   Uh-huh.

4        A.   It's a servicer update file.

5        Q.   Uh-huh.

6        A.   Any information, any status change to the

7   account that once NRC had it would have come to

8   Resurgent that way.  It's how the systems speak to

9   each other.

10       Q.   So, that's how you -- okay.  Are all these

11  other -- if you go down the line to like 10/1/2015,

12  and then on -- it says, at the end it says, SUF.  Is

13  that from NRC too?

14       A.   No, ma'am.  It would be with whatever

15  servicer had the account at that time.

16       Q.   And you told me -- how do you tell which

17  servicer has the account at the time?

18       A.   Just based on the time period of the

19  placement.

20       Q.   Okay.  Okay.  All right.  Can you go back

21  to the beginning of Exhibit C?

22       A.   Yes, ma'am.

23       Q.   Can you go to "borrower, phone, current"

24  and then can you go to debtor?  Now, can you go to

25  the first one.  I'm looking at the first phone
```

```
 1   number, ███████████?

 2        A.  Yes.

 3        Q.  Is that the phone number that LVNV had for

 4   Ms. Torres, or Resurgent had for Ms. Torres?

 5        A.  It's the home phone number that -- the

 6   current one that we had at that time.

 7        Q.  Was Ms. Torres' phone number provided to

 8   NRC?

 9        A.  It would have been.  Yes, ma'am.

10        Q.  Now, let's go down to the ███████████

11   number.

12        A.  Okay.

13        Q.  Was this a work number that Resurgent had

14   on file for Ms. Torres?

15        A.  That's what it says.  I'm sorry.  I didn't

16   mean that sarcastically, I mean, that's how it's

17   labeled here in the system that that is a work

18   number.

19        Q.  Okay.  Now, would Resurgent have provided

20   that number to NRC?

21        A.  Yes, ma'am.

22        Q.  Could you go to what is Bates stamped as

23   LVNV002?

24        A.  Okay.

25        Q.  Can you go to where it says, the first
```

TONYA HENDERSON on 01/25/2017

30(b)(6)

```
 1   little line there, it says debtor, then it says
 2   attorney.  Do you see where I'm at?
 3       A.  Yes.
 4       Q.  Under name, it says cease and desist and
 5   then under address, it says cease and desist.  Do
 6   you know why this information was put in here?
 7       A.  No, ma'am.
 8       Q.  Did you say, "No, ma'am"?
 9       A.  No, I do not.
10       Q.  Do you know what this information means?
11       A.  No.
12       Q.  Who would know?
13       A.  I'm not sure, because usually there are
14   initials when people add things and I don't have
15   anything here to indicate who placed the cease and
16   desist information.
17       Q.  Do you know -- do you have any idea when
18   this information was put in?
19       A.  No, ma'am.
20       Q.  Is there any way you could find out?
21       A.  I can certainly try.
22       Q.  Okay.  If you go to the second row, it says
23   debtor, it says attorney, then it says name, Michael
24   J. Wood, and it gives an address and a suite number.
25   Do you see that?
```

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

1      A.   I do, yes.

2      Q.   Do you know when this information was put

3   into the system?

4      A.   No, ma'am.

5      Q.   Is that because there's no signature or no

6   initials?

7      A.   Because there's no initial nor is there any

8   kind of date time stamp of it.

9      Q.   Is there usually a date or a time stamped

10   on something like this?

11      A.   Most fields do.  Any other fields, we would

12   have to -- it would probably be an IT question.

13      Q.   So, just so I understand you correctly, are

14   you saying that there's just no field for that

15   information, that's why it's not provided?

16      A.   It's not -- exactly, it's not reflected.

17      Q.   Right.  Yeah, is that because there's just

18   no -- there's no field for it?

19      A.   I mean that would be my assumption, yes.

20      Q.   Now, in the account notes, where would

21   attorney representation at, like how would it be

22   notated, like where would you put it, where would it

23   be in the AMCS system?

24      A.   Well, I would expect to see it in the notes

25   section, that someone had received information of an

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

1   attorney, and it also could be in the status code

2   section.

3        Q.  Okay, when you say "note section," what

4   section are you referring to?

5        A.  Let me see if I can find it.  It's on the

6   next page, LVNV003.

7        Q.  Okay.

8        A.  And it's entitled "account notes."

9        Q.  Okay.  So, somewhere in this information,

10  it would be here?

11       A.  Yes, ma'am.

12       Q.  Just from my quick look, you know, I know

13  you guys have redacted some information.  I'm not

14  asking you, obviously, what was said or anything

15  like that, but it looks like on 11/9 of 2015 that

16  there was some type of communication from Blatt.  Is

17  that correct?

18       A.  Yes, ma'am.

19       Q.  Now, what is -- I'm looking at this file

20  2/20/13 note, are you there?

21       A.  Yes.

22       Q.  In the note section, there are some notes

23  in there.  Can you tell me what those notes mean?

24       A.  This is the logic, so every time -- if the

25  system makes a change to the account, the logic

30(b)(6)

```
 1   itself will place a note in.

 2        Q.   Uh-huh.

 3        A.   And that's what happened on 5/2/2013, it

 4   looks like it basically pulled the account and

 5   rolled it back to the law firm of Eltman, Eltman and

 6   Cooper.

 7        Q.   Okay, when you say "rolled back," what do

 8   you mean?  Does it -- does that mean that it placed

 9   the account with Eltman, Eltman and Cooper, P.C.?

10        A.   Yes, ma'am.

11        Q.   And the system does that automatically?

12        A.   Places the note there?

13        Q.   Uh-huh.

14        A.   Yes, ma'am.

15        Q.   All right.  If you go to that 5/2/2013

16   date, the next date, is that the same information

17   just dated twice?

18        A.   Yes.  There's two different notes.  One's

19   -- they're like a minute apart.

20        Q.   Is it saying the same thing?

21        A.   Yes, in short it is.  I don't know why the

22   logic puts two there.  I'm sure that's a data

23   management reason.

24        Q.   If you go to 5/1/2013, are you there?

25        A.   Yes.
```

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
1        Q.  Under note types it says, -- well, under --
2   under -- not note types, but under notes, do you see
3   where it says notes?
4        A.  Yes, ma'am.
5        Q.  Can you tell me what that note means?
6        A.  That the account had been approved to go
7   back to Eltman Law Firm.
8        Q.  Then, who -- okay -- who's Kylan Hawthorne?
9        A.  Kylan Hawthorne?
10       Q.  Uh-huh.
11       A.  Is an employee at Resurgent in the
12  inventory management department.
13       Q.  Are these his notes?
14       A.  These are her notes, yes, ma'am.
15       Q.  Okay.
16       A.  Well, I apologize, they're actually not her
17  notes.  They are the notes of Wayne Davis.
18       Q.  Wayne Davis.  Okay.  How do you know that?
19       A.  Under the "created by" tab, it's W. Davis.
20       Q.  Oh.  Oh.  Okay.  Now, at 12/2/2010, are you
21  at that note?
22       A.  Yes, ma'am.
23       Q.  Can you tell me under the notes section,
24  what that section means?
25       A.  It says, "account balance" -- in his short
```

30(b)(6)

```
 1    hand, I believe, "verified to reflect best possible
 2    post judgment balance."
 3        Q.  Can you tell me what that means?
 4        A.  I would assume that it means someone wanted
 5    to check what the judgment balance was.
 6        Q.  Okay.  Then, if you go down to the payment
 7    information, this second section, it just has --
 8    what is being listed in the payment information
 9    section?  I see you have -- can you tell me what
10    these sections mean, like trans date, post date,
11    transaction, of course, transaction amount, trans
12    code?
13        A.  It's just the system is trying to tabulate
14    and keep a balance of what accruing the interest
15    would actually be.
16        Q.  Can you tell me who CenterPoint Legal
17    Solutions, LLC, is?
18        A.  It's a servicing firm.
19        Q.  A servicing firm?
20        A.  Yes, ma'am.
21        Q.  What are they servicing?
22        A.  Resurgent retains them and they place the
23    account with law firms.
24        Q.  Resurgent retained CenterPoint?
25        A.  Yes, ma'am.
```

30(b)(6)

1 Q. And then CenterPoint placed it with -- then
2 CenterPoint will place it with an agency or another
3 entity?

4 A. Yes, ma'am.

5 Q. When did Resurgent hire CenterPoint for
6 servicing on Ms. Torres' account?

7 A. It was around -- in February, 2016.

8 Q. In February of 2016?  Can you tell me who
9 the servicer was prior to that?

10 A. InvestiNet, LLC.

11 Q. I'm sorry.  I didn't hear you.  Can you say
12 that again?

13 A. InvestiNet, it's I-n-v-e-s-t-i-N-e-t.

14 Q. InvestiNet, okay.  Can you tell me -- can
15 you go to what's date stamped as LVNV004 of Exhibit
16 D?

17 A. Okay.

18 Q. Can you go to the first 2/19/2016 date?

19 A. 2016?

20 Q. Yeah, 2016, sorry.

21 A. Yes.

22 Q. Can you tell what FTM system means?

23 A. Certainly.  It's a portion of AMCS.  It's
24 -- I think it stands for Financial Transaction
25 Management.  It's part of AMCS.

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
 1        Q.  Part of AMCS, but that's not a servicer?
 2        A.  No, ma'am.
 3        Q.  Now, what does -- if you go to the row
 4   over, it says, 000, then it says bring cost to 0.
 5   What does that mean?
 6        A.  If I go up, bring cost to 0?
 7        Q.  Uh-huh.
 8        A.  The system recognizes that the account's
 9   now going to be sent over to CenterPoint.
10        Q.  Uh-huh.
11        A.  And if InvestiNet, the previous servicer
12   had cost, my understanding is that the cost would go
13   back to 0.
14        Q.  Can you go to that next line for 2/19/2016,
15   and it says, under the trans amount, it says, 000
16   and it says, bring interest to 0.  What does that
17   mean?
18        A.  Just to bring the interest back to 0.
19        Q.  Well, why are you bringing interest back to
20   0?
21        A.  It's -- the system tracks -- tries to keep
22   track along with the servicing firms as to what it
23   should be, so at that point the system was going to
24   allow CenterPoint to calculate what they believe the
25   interest would be and the system went back to 0.
```

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
 1        Q.  I see.  Now, can you tell me when Resurgent
 2   hired InvestiNet to service Ms. Torres' account?
 3        A.  I'm sorry.  Say that again?
 4        Q.  Can you tell me when Resurgent hired
 5   InvestiNet to service Ms. Torres' account?
 6        A.  Yes, I can.  Hold on one second.  It would
 7   have been on March 28th, 2014.
 8        Q.  March 28th, 2014.  Okay.  Now, can you tell
 9   me if there were -- if Resurgent hired another
10   servicer prior to June 24th of 2016, I mean, sorry,
11   prior to March 28th, 2014?
12        A.  If they hired another one?
13        Q.  Yeah.
14        A.  Yes, ma'am.
15        Q.  Who did they hire?
16        A.  Eltman Law Firm, or Eltman, Eltman and
17   Cooper, I believe.
18        Q.  So, Eltman, Eltman and Cooper.  Okay.  When
19   did Resurgent hire Eltman, Eltman and Cooper?
20        A.  December 2nd, 2010.
21        Q.  December 2nd.  Do you know how long Eltman
22   and Cooper were servicing Ms. Torres' account?
23        A.  Until March 28th, 2014, when it went to
24   InvestiNet.
25        Q.  Just for my clarification, the servicer and
```

**30(b)(6)**

```
 1    the collection agency or the law firm, they are two

 2    different entities.  Right?

 3         A.  I'm sorry.  Say that again?

 4         Q.  The two -- we're talking about the servicer

 5    and then who they hire, they are two separate

 6    entities.  Right?

 7         MR. FOSTER:  Object to the form.

 8              BY THE WITNESS:

 9         A.  I don't know.

10         Q.  You don't know?

11         A.  I guess I don't know.

12         Q.  But, would -- would it be -- would Eltman

13    Law -- for instance, would Eltman Law, P.C., be the

14    servicer hiring a law firm to collect on Ms. Torres'

15    account?

16         A.  Yes, ma'am.

17         Q.  Okay.

18         MS. CHATMAN:  All right.  We are at the two-hour

19    mark, so I'm going to take another ten-minute break.

20    (BRIEF RECESS)

21              BY MS. CHATMAN:

22         Q.  If we could go to -- back to Exhibit C and

23    then what's date stamped as LNVN033?

24         A.  Okay, I have it.

25         Q.  Now, it says "a placement history."  Do you
```

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

1  see where I'm at "placement history"?

2      A.  Yes, ma'am.

3      Q.  What is this a placement history of?

4      A.  Of the account.

5      Q.  It says placement, but is this the

6  placement history of the servicer?

7      A.  Yes, from October 2009 going forward.

8      Q.  Now, I know LVNV bought the debt in --

9  before 2009, who was the server before 2009?

10     A.  Well, Blatt was the servicer that received

11  the judgment, but this placement history only goes

12  from 2009 forward.

13     Q.  Okay.  If you could go to what is Bates

14  stamped as LVNV037 of Exhibit C?

15     A.  Okay.  I'm there.

16     Q.  It says, "documents in OnBase."  What does

17  that mean?

18     A.  OnBase is the document repository software

19  that we use.

20     Q.  Under document types, are these a list of

21  documents that LV, I mean, is this a list of

22  documents that Resurgent has in its document

23  depository?

24     A.  Yes, ma'am.

25     Q.  So, the first document, it says, "LS

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
 1    Judgment," is that correct that it says, doc type
 2    and then it says LS judgment?
 3         A.  Yes.
 4         Q.  What -- what is that referring to?  Do you
 5    what type -- do you know what document that's
 6    referring to?
 7         A.  I believe it's the judgment in this case.
 8         Q.  Judgment in this case.  Okay.  Does it
 9    include the revised judgment?
10         A.  I believe so.
11         Q.  Then, if you go to, "other legal," what --
12    do you know what type of document that would be?
13         A.  No, ma'am.  It just means that when someone
14    scanned it in, they didn't really quite be able to
15    identify what they are looking at and so without
16    opening each of these documents, I couldn't tell you
17    exactly what they were.  I did open each one of them
18    in preparation for this case to see if they were
19    indeed all legal documents.
20         Q.  Are they all legal documents?
21         A.  Yes, ma'am.
22         Q.  Have we reviewed any documents in this
23    depository today?
24         A.  I'm sorry.  Say that again?
25         Q.  Have we any of those -- have we reviewed
```

30(b)(6)

1    any documents today that are in this depository?

2         A.  No, ma'am.  I don't -- unless it was -- I

3    would have to look back at D, on the collection

4    action.

5         Q.  Okay.  How about you look back at D?

6         A.  Yes.  The order dated June 22nd, 2006,

7    which is LVNV056, is listed in there as the

8    judgment.  The summons, LVNV073, is listed as a

9    summons, LVNV075, the affidavit of indebtedness, is

10   listed at least twice under the other legal tab.

11   And LVNV076, the one that says, "alias summons,"

12   might be the other summons that is listed.

13        Q.  Now, I know there are three entries here

14   from, I think two are from 2008 and one is from 2009

15   and it just says, "other legal."  Do you know who

16   those -- do you know who would have deposited those

17   documents into this depository?

18        A.  No, ma'am.

19        Q.  Now, I would like -- Okay, here we are.  If

20   you -- if I could draw your -- if you could go to

21   what's date stamped as LVNV055?

22        A.  Okay.

23        Q.  Now, this just says additional -- I'm going

24   to go to the part where it says, "additional account

25   data."

TONYA HENDERSON on 01/25/2017

30(b)(6)

```
1       A.   Okay.

2       Q.   I wanted to go back to -- where did -- do

3   you know -- let's start with the first line on the

4   additional document data, it says, "last" and it

5   says, "PMT date" and it says "3/19/2002."  Can you

6   tell me what that means?

7       A.   It's the last payment date on the account.

8       Q.   Then it says, "Last PMT," and it says

9   "AMT", can you tell me what that means?

10      A.   The last payment amount.

11      Q.   What was the last payment amount?

12      A.   $32.

13      Q.   Can you tell me where Resurgent received

14  that information from?  Did they get it from the

15  original creditor?

16      A.   They got it from Sears National Bank.  Yes,

17  ma'am.

18      Q.   Did they get the rest of this information

19  from Sears National Bank?

20      MR. FOSTER:  Object to the form.

21          BY THE WITNESS:

22      A.   I -- some of it would have come from --

23  most of it would come from Sears National Bank.

24  There might be updates as information we provided.

25      Q.   I see the purchase date of June 23rd, 2003.
```

30(b)(6)

1   Do you see that?  It's in the second row.

2        A.  Yes, ma'am.

3        Q.  Now, there's not document -- was there no

4   servicer from 2003 to 2008 on Ms. Torres' account?

5        A.  I don't believe it's tracked in AMCS.

6        Q.  Where would that information be?

7        A.  I just believe it's something that the IT

8   department, if they maintained records that old,

9   would have to go back and find.

10       Q.  So, I just have a couple more questions

11  left.  If we can go back to Exhibit A.

12       A.  Okay.

13       Q.  If we can go -- if we can go to Exhibit L

14  of Exhibit A, for the record.

15       A.  Okay.

16       Q.  Can you tell me what this document is?

17       A.  It appears to be an affidavit for wage

18  deductions summons.

19       Q.  Do you know if this document was ever

20  filed?

21       A.  I don't know.

22       Q.  Do you know who -- if you go down, it says,

23  "attorney" -- if you go down, it says Ronald C.

24  Miller?

25       A.  Yes, ma'am.

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
 1        Q.  Under attorney, it says, "Name, Ronald C.
 2   Miller.  Do you know who Ronald C. Miller is?
 3        A.  No, ma'am.
 4        Q.  He -- it says, attorney for Plaintiff, if
 5   you go down.  Do you see that?
 6        A.  I do.
 7        Q.  Do you see the address, 11970 Borman Drive,
 8   Suite 250?
 9        A.  Yes.
10        Q.  Then do you see the city and the state, it
11   says, St. Louis?
12        A.  Yes, I do.
13        Q.  MO, 63146, do you know any attorneys for
14   Resurgent with that address?
15        A.  Sitting here right now, I can't recall
16   whose address that it.
17        Q.  You don't know if -- do you know if Ronald
18   C. Miller works for Miller and Steeno, P.C.?
19        A.  I don't know.
20        Q.  Who would know?
21        A.  I'm guessing Miller and Steeno or Ronald
22   Miller.  I'm not sure that's something we would be
23   aware of.
24        Q.  But you don't recall -- but Resurgent
25   doesn't recall hiring an attorney by the name of
```

```
 1    Ronald C. Miller?
 2         A.   The name Ronald C. Miller is not sticking
 3    out for me today as to who he might be with.
 4         Q.   Do you know if any other servicer hired
 5    Ronald C. Miller?
 6         A.   I don't know.
 7         Q.   All right.  Can you go to -- can you go to
 8    Exhibit F of Exhibit A, for the record?
 9         A.   F?
10         Q.   Uh-huh.
11         A.   Okay.
12         Q.   Can you tell me what this document is?
13         A.   Exhibit F is "Summons to Revise Judgment."
14         Q.   Have you seen this document before?
15         A.   Yes, ma'am.
16         Q.   Are you familiar with this document?
17         A.   I've reviewed it before.
18         Q.   Do you know if this document was filed?
19         A.   I don't know.
20         Q.   Can you go down -- down, it says -- can you
21    go down to where it says, "Bleecker, Brody and
22    Andrews"?
23         A.   Yes, ma'am.
24         Q.   Do you know if Resurgent hired Bleecker,
25    Brody and Andrews to file this summons to revise
```

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

1   judgment?

2       A.  I am -- I know that Bleecker, Brody and

3   Andrews were retained to represent LVNV Funding on

4   this account to see if they could collect on the

5   judgment.

6       Q.  Were they also hired to file documents on

7   her state court case, I think the case number is

8   2005-M1192307?

9       MR. FOSTSER:  Object to the form.

10          BY THE WITNESS:

11      A.  Well, I believe they were retained to

12  collect on the judgment and if they had to go

13  through the courts to the collection action, they

14  would have done whatever they legally were required

15  to do.

16      Q.  Do you know if Resurgent reviewed this

17  summons to revise judgment before it was actually

18  filed?

19      A.  I don't believe so.

20      Q.  All right.  Do you know if any of the firms

21  that were allowed to collect the judgment on Ms.

22  Torres' account were allowed to sue for -- was

23  allowed to settle on the judgment for less?

24      MR. FOSTER:  Object to the form of the question.

25          BY THE WITNESS:

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

 1    A.  I don't know.  That's not anything I looked

 2  into.

 3    Q.  Okay.  Did any of the firms have the

 4  ability to settle Ms. Torres' case?

 5    MR. FOSTER:  Object to the form of the question.

 6        BY THE WITNESS:

 7    A.  I -- settling the judgment wasn't anything

 8  I really looked into, so I don't know specifically

 9  if these firms could have settled the judgment.

10    Q.  Who would know?

11    A.  I guess the firms themselves would know.

12    Q.  Would any of the servicers hired by

13  Resurgent have to approve any settlements?

14    MR. FOSTER:  Object to the form of the question.

15        BY THE WITNESS:

16    A.  I don't know.

17    Q.  Who would know?

18    A.  I'm not really sure.  It's not anything I

19  thought about and kind of looked to see if there

20  were any settlement discussions or anything with any

21  of the firms.

22    MR. FOSTER:  Celetha, we've got twenty minutes

23  left.

24    MS. CHATMAN:  All right.  It's five o'clock your

25  time, what is it, four o'clock our time?

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
1         MR. FOSTER:  That's correct.

2         MS. CHATMAN:  Okay.  Well, no further questions.

3         MR. FOSTER:  Okay.  I have a simple follow-up

4    question.

5                        CROSS-EXAMINATION

6              BY MR. FOSTER:

7         Q.  Ms. Henderson, would you turn to Exhibit C,

8    that you have?  Turn to page LVNV32 of Exhibit C.

9         A.  Okay.

10        Q.  Do you see the section that's called,

11   "Collection Status History"?

12        A.  Yes.

13        Q.  Earlier in your deposition testimony, you

14   talked about a status code of ATT.  Do you remember

15   that testimony?

16        A.  Yes.

17        Q.  What does the status code of ATT mean?

18        A.  It stands for the debtor has retained an

19   attorney.

20        Q.  Who would place that status code into the

21   account, the account notes like the ones that you

22   see in front of you in Exhibit C?

23        A.  Well, if the servicer received the

24   information, it would change to a sub file that's

25   SUF, the Servicer Update File, meaning they had
```

30(b)(6)

1    received notification that an attorney represented

2    the consumer.  If someone at Resurgent would have

3    changed it, it would be changed with their initials

4    and name out to the side.

5         Q.  On page LVNV32 of Exhibit C, are all the

6    status codes for Ms. Torres' account listed here?

7         A.  From August 2009 through 2016, yes.

8         Q.  Does the status code of ATT appear anywhere

9    on that list of status codes?

10        A.  No, sir.

11        Q.  All right.

12        MR. FOSTER:  That's all I have.

13        MS. CHATMAN:  I don't have any further

14   questions.

15        COURT REPORTER:  Do you want these documents

16   attached to the deposition?

17        MS. CHATMAN:  Yes, I do.  A .pdf copy, no hard

18   copies.  Include exhibits with her copy.

19        COURT REPORTER:  Okay.  Mr. Foster, do you want

20   a copy?

21        MR. FOSTER:  I'll take an e-transcript, and I

22   don't need copies of the exhibits.

23        COURT REPORTER:  Thank you so much.

24   (Whereupon, the deposition was concluded at 4:46

25   p.m.)

**TONYA HENDERSON on 01/25/2017**

30(b)(6)

```
 1                CERTIFICATE OF REPORTER
 2   STATE OF SOUTH CAROLINA )
 3   COUNTY OF YORK          )
 4              I, Cathy L. Young, CVR-M, a Notary
 5   Public for the State of South Carolina, do hereby
 6   certify that I placed under oath the aforesaid
 7   deponent; that I reported the foregoing proceedings
 8   at the time and place herein designated and that the
 9   foregoing pages are a true, accurate, and correct
10   transcript of the aforesaid proceedings.
11              I further certify that I am not a
12   relative, employee, attorney or counsel of any of
13   the parties, nor relative or employee of such
14   attorney or counsel, nor in any way interested in
15   the event of said cause.
16              In witness my hand and official seal
17   this is the 1st day of February, 2017, in the City
18   of Fort Mill, County of York, State of South
19   Carolina.
20              _____
21              Cathy L. Young, CVR-M
22              Court Reporter and Notary
23              Public in and for South Carolina
24              My Commission expires:  2-19-19.
25
```

**TONYA HENDERSON on 01/25/2017**

**30(b)(6)**                                        Index: $32..5/2/2013

**Exhibits**

**HendersonT A**
2:17 4:1
23:5,21
28:5,12
33:5,6,8
36:9 38:1,
18,23,24
70:11,14
72:8

**HendersonT C**
2:18 4:3
9:5,6
10:20
15:12,13
24:19
51:12
54:21
65:22
66:14
75:7,8,22
76:5

**HendersonT D**
2:19 4:5
11:22 38:7
62:15,16

---
**$**
---

**$32** 69:12

---
**0**
---

**0** 63:4,6,
13,16,18,
20,25

**000** 63:4,15

**05-M1** 20:10

**06** 17:25
18:10

**074** 13:7,8

**079** 19:19

---
**1**
---

**1** 30:16

**10/1/2015**
54:11

**100** 42:22

**105.5A** 30:3

**11/9** 58:15

**11970** 71:7

**12/2/2010**
60:20

**125** 30:5

**16** 32:13
44:14

**16-cv-06665**
6:7

**16th** 34:6,
21

**19th** 52:22
53:3

---
**2**
---

**2/19/2016**
62:18
63:14

**2/20/13**
58:20

**2003** 9:19,
20 10:1
69:25 70:4

**2005** 9:3

**2005-M1192307**
73:8

**2006** 19:8
68:6

**2008** 68:14
70:4

**2009** 66:7,
9,12 68:14
76:7

**2010** 24:23,
24 64:20

**2013** 20:3,
25 23:25

**2014** 34:13
64:7,8,11,
23

**2015** 32:12
34:6,21
58:15

**2016** 44:12,
13 52:22
53:3,10,25
62:7,8,19,
20 64:10
76:7

**20th** 23:25

**22nd** 68:6

**23rd** 9:19,
20 69:25

**24th** 20:2,
24 53:10,
21,25
64:10

**25** 52:18

**250** 71:8

**28th** 64:7,
8,11,23

**298** 29:17,
23 30:13

**2nd** 64:20,
21

---
**3**
---

**3/19/2002**
69:5

**30(b)(6)**
7:12

**32** 52:14,
15,20

**3rd** 32:12

---
**4**
---

**4:46** 76:24

---
**5**
---

**5/1/2013**
59:24

**5/2/2013**
59:3,15

**55**  52:14

_____

**6**

**6**  29:10

**63146**  71:13

_____

**7**

**7**  29:13

**735ILCS5/5-**
  30:2

**735ILCS5/5-105**
  30:16

**773-221-9383**
  55:10

**773-614-3737**
  55:1

_____

**A**

**abilities**
  16:5

**ability**  74:4

**access**  17:17

**account**  4:3
  7:4 8:13,
  14,16,20,
  22 9:9,11,
  15,18,21
  10:1,6,8,
  12,17,19,
  21,22
  11:1,2,4,5
  13:3

14:10,21
15:23
17:4,6
18:5,16,
17,23
21:25 22:5
25:16,21
33:4
34:10,15
35:12,14
37:16 39:3
41:14
42:11,16,
20 43:8,
10,15,17,
21 44:8,21
45:3,5,16,
23 46:13
47:3,7,23
48:8,10,
13,15,21,
22,24 49:7
50:3 51:1,
13,17,18,
23,25
52:12
53:15
54:7,15,17
57:20
58:8,25
59:4,9
60:6,25
61:23 62:6
64:2,5,22
65:15 66:4
68:24 69:7
70:4 73:4,
22 75:21

76:6

**account's**
  63:8

**accounts**
  6:24 7:1,3
  10:13,14
  11:9,12,
  15,18
  15:19
  28:22
  39:22
  41:17
  44:16 46:2

**accruing**
  61:14

**acknowledged**
  35:21

**acquire**  8:15

**acquired**
  8:21 9:15,
  18,20
  10:1,6,11,
  14

**acquires**
  11:1

**action**  25:11
  49:13 68:4
  73:13

**actionable**
  49:16,19

**actions**  6:11
  25:24

**add**  5:14
  16:4 56:14

**additional**
  5:12
  68:23,24
  69:4

**address**
  56:5,24
  71:7,14,16

**advises**
  21:12

**affidavit**
  68:9 70:17

**agencies**  7:3
  42:15,17
  43:20

**agency**  42:1
  44:16
  49:24 62:2
  65:1

**agent**  10:7

**agreements**
  7:17

**alcohol**  5:21

**alias**  68:11

**allegedly**
  32:1

**allowed**
  73:21,22,
  23

**AMCS**  15:8,
  9,13,21,
  23,25
  16:3,6
  22:21 23:1
  24:17

26:2,8,11
27:15
36:24 37:3
50:14,18,
20 51:7,9
57:23
62:23,25
63:1 70:5

**amicable**
35:3

**amount** 61:11
63:15
69:10,11

**AMT** 69:9

**Andrew** 30:17
31:13,15
34:19
35:5,8,11,
17,19

**Andrews**
24:1,2,8
72:22,25
73:3

**answers**
4:17,20
10:9

**anymore** 22:1

**ap** 53:21

**apologize**
60:16

**appearance**
28:15,16,
19

**appears** 12:3

16:13
20:15
70:17

**approval**
7:17

**approve**
74:13

**approved**
60:6

**aspect** 40:6

**aspects** 46:7

**assume**
20:22,23
61:4

**assumption**
57:19

**ATT** 37:12
75:14,17
76:8

**attached**
4:2,4,6
76:16

**attempted**
6:12

**attention**
36:8 51:11

**attorney**
4:12 5:7
13:16
21:15
22:2,17,23
25:11
27:8,14,
17,18 28:1

29:25
30:18
31:18 33:1
36:13,25
37:6,8,13,
22 39:2,16
41:22
45:6,10,
15,17
46:2,5,6
52:8 56:2,
23 57:21
58:1 70:23
71:1,4,25
75:19 76:1

**attorneys**
25:15,20
31:8
32:20,22
39:8,9,21
40:1,3,11,
17 41:16
45:8 71:13

**August** 76:7

**authority**
47:4,6

**authorize**
35:7 46:23

**authorized**
7:13 12:24
47:2

**automatically**
59:11

**aware** 35:18
37:21

39:17
41:9,12,
14,16
44:20,25
45:20
71:23

_____

**B**

_____

**back** 14:6
15:3,4
16:7 18:10
19:8 21:16
36:8 37:23
38:23
39:19 40:8
41:2 42:1,
3 46:23
54:20
59:5,7
60:7
63:13,18,
19,25
65:22
68:3,5
69:2 70:9,
11

**balance**
60:25
61:2,5,14

**Bank** 69:16,
19,23

**based** 54:18

**basically**
8:2 59:4

**Bates** 11:24

13:5 16:9
19:17
20:13 23:3
38:11
55:22
66:13

**Beecker**
24:20

**beginning**
54:21

**begun** 10:8

**behalf** 7:12
17:9 31:9
37:15 40:4
43:9,13
50:2

**believed**
49:12

**BHLM** 20:22

**bit** 23:16,
17

**Blatt** 12:10,
11,13,16,
19,22,24
13:2,24
14:13,18
15:7,14,
17,18,20,
24 17:17,
21,22,23,
24 18:4,7,
13 19:3,
10,12,15
20:4,17,
20,22,24

21:2,5,8
22:7,15,25
25:10,17
26:2 38:14
41:11
58:16
66:10

**Blatt's**
15:14

**Bleecker**
24:1,8,9,
12,13,15
25:3,8,12,
18,25
26:1,4,9,
12,13,14,
16,17,21
38:20
41:7,9
42:23
43:6,9
72:21,24
73:2

**Borman** 71:7

**borrower**
54:23

**bottom** 21:1

**bought** 66:8

**boy** 38:5,6

**break** 5:6,9
36:4,5
65:19

**breaking**
15:4

**bring** 63:4,
6,16,18

**bringing**
63:19

**Brody** 24:1,8
72:21,25
73:2

**business**
7:19,22
10:13,15,
22 24:1

————————————

**C**

**calculate**
63:24

**call** 11:11
14:24
16:13
47:4,17
50:5,6
52:10

**called** 15:8
16:3,6
41:21
47:15
53:21
75:10

**calls** 11:17
46:24 47:5

**Capital**
6:19,20,
21,23 7:7
10:2 28:21

**case** 6:7,

11,13
12:23
13:16
16:14
19:16
20:6,8
21:14
24:3,5
25:18 27:5
29:8,17
31:17 34:6
40:6 46:8
67:7,8,18
73:7 74:4

**cases** 31:20

**cease** 56:4,
5,15

**Celetha** 4:11
30:25
31:10,22
43:23
74:22

**Center** 23:12
42:5

**Centerpoint**
61:16,24
62:1,2,5
63:9,24

**certification**
29:17
30:18

**certifies**
29:24

**chance** 23:17
33:25

**TONYA HENDERSON on 01/25/2017**

change
  18:16,22,
  25 41:25
  53:9 54:6
  58:25
  75:24

changed 76:3

charges
  30:15

Chatman
  4:10,11
  30:22
  31:6,17
  32:3 38:7
  43:5 44:6
  65:18,21
  74:24 75:2
  76:13,17

CHATMEN 36:7

check 18:11
  46:11 61:5

Chicago
  12:15

Circuit 28:9

city 71:10

civil 29:18
  30:1,8

clarification
  64:25

clarify 44:1

clear 6:13,
  16

Clinic 20:3

21:13
23:25
27:3,24
28:20
29:25 30:3

code 37:5,
  12,17
  52:14,17
  58:1 61:12
  75:14,17,
  20 76:8

coded 27:25
  28:1

codes 15:2
  37:11
  76:6,9

collect
  25:15
  34:10,12,
  15 42:8,
  11,15,17,
  24,25
  43:1,7,10,
  12,14,16
  44:7 47:3
  48:21,24
  49:14
  65:14
  73:4,12,21

collected
  6:6,12

collection
  7:3 10:14
  21:25
  25:11,12,
  18,19

35:15
45:25
47:8,10,24
48:2,4
49:24
52:21 53:5
65:1 68:3
73:13
75:11

collections
  52:23

collectors
  28:23

communicate
  14:12,16
  15:20 22:4
  35:8 40:7
  49:9 50:8,
  9,22 51:24

communicated
  26:1 50:25
  51:16

communicates
  49:4

communication
  14:22,25
  18:3 22:1,
  2 51:6,15
  52:4,5,8,
  11 58:16

communications
  40:8 51:2,
  8

company 7:21
  21:21 41:3

compatible
  15:14

complaint
  4:1,6
  13:11,23
  14:1,3,8
  20:13 23:8
  33:21

complaints
  13:13,14,
  21

comply 39:14
  49:25 50:4

concluded
  76:24

confuse
  40:22

consumer
  10:15,17,
  21 17:10
  19:11
  21:15
  22:1,22
  27:16
  37:12
  39:3,9,16
  45:15 46:5
  76:2

consumers
  11:8,11,
  15,18
  31:19
  37:20 49:5

contact
  35:17,19

**TONYA HENDERSON on 01/25/2017**

39:15 41:3

contacted
37:14

contained
21:5,9
26:25 27:1

continue
35:13

Continuing
32:10
33:10,13
36:7 43:5
44:6

Cook 12:5
20:10 28:9

Cooper 59:6,
9 64:17,
18,19,22

copies
76:18,22

copy 76:17,
18,20

correct 19:5
43:21
58:17 67:1
75:1

correctly
40:10
57:13

cost 63:4,
6,12

costs 30:15

counsel

29:24
36:17,20
44:21 45:1

counterclaims
7:16

County 12:5
20:10 28:9

couple 70:10

court 4:1,3,
5,18,21
12:5
18:12,15
20:10 23:9
28:9 29:23
30:1,8,13
31:1 73:7
76:15,19,
23

courts 73:13

Cox 24:1

created 15:8
16:4 18:14
60:19

creditor
69:15

CROSS-
EXAMINATION
75:5

current 7:6
8:16,19
30:5 54:23
55:6

D

data 44:19
59:22
68:25 69:4

date 32:5,7
34:20
52:21 53:2
57:8,9
59:16
61:10
62:15,18
65:23
68:21
69:5,7,25

dated 20:2
23:25 34:6
59:17 68:6

Davis 60:17,
18,19

day 46:19

debt 6:6,12
7:24,25
8:4 9:21
21:25 66:8

debtor 22:22
36:25 37:8
54:24
56:1,23
75:18

Debtors 20:3
21:12
23:24
27:3,23
28:20

29:25 30:3

debts 8:3,6

December
64:20,21

decision
14:10 50:6

deductions
70:18

default
25:2,3

defend 30:14

defendant
31:25

defined
30:2,15

Demand 28:15

department
7:15 60:12
70:8

depend 51:5

deposed 4:13

deposited
68:16

deposition
4:12,15,17
12:8 16:20
23:18 34:1
75:13
76:16,24

depository
66:23
67:23
68:1,17

**Maxene Weinberg Agency,
a Huseby Company**

**TONYA HENDERSON on 01/25/2017**

desist   56:4,
  5,16

determination
  13:25 30:4

determine
  48:2,4

determines
  44:15

difficult
  5:18

DIRECT   4:9

directed
  31:18
  34:19

directs   31:8

discovery
  7:16 33:1

discussions
  74:20

District   6:8
  23:9,10

Division   6:9

doc   67:1

document
  9:8,9,12,
  14,17
  10:24
  12:2,3,6,9
  13:10
  16:12,16,
  18,22,24
  17:3,9,10,
  11,13,17,

21,22,23
19:22,24
20:1,6,16,
19 23:7,8,
13,15,18,
23 26:13
28:7,14
29:6 30:21
31:2,8,11,
16,23
32:2,9,11,
15 33:19,
20,22
34:1,3
66:18,20,
22,25
67:5,12
69:4 70:3,
16,19
72:12,14,
16,18

documentation
  8:23 31:19

documents
  10:19
  17:5,16
  18:5,6,7,8
  19:2,10
  32:19,21
  66:16,21,
  22 67:16,
  19,20,22
  68:1,17
  73:6 76:15

dog   11:22
  38:7

doubtful
  45:8,12

draw   36:8
  51:11
  68:20

Drive   71:7

drugs   5:17

duly   4:7

duties   7:10,
  11

─────────────

        E
─────────────

e-transcript
  76:21

earlier   5:13
  16:3 25:1
  75:13

Eastern   6:8

electronic
  9:10 16:2,
  7 26:5,7
  28:8,22
  29:7 40:7
  44:19

electronically
  14:25
  30:17,23
  32:4,11

eleven   46:19

eligibility
  30:7

eligible
  30:6,14

Eltman   59:5,
  9 60:7
  64:16,18,
  19,21
  65:12,13

email   14:24
  26:5 50:23

employee
  60:11

employees
  8:10

employer
  6:18

encrypted
  50:20

end   53:20
  54:12

ensure   46:2

entails
  48:25

enters   28:18

entities
  65:2,6

entitled
  58:8

entity   8:2
  62:3

entries
  68:13

event   4:3
  9:9

evidence
  51:6

exact  52:4,5

EXAMINATION
 4:9

exhibit  4:1,
 3,5 9:5
 10:20
 11:22
 15:12
 23:5,21
 24:19
 28:5,11,12
 29:3,10
 33:5,8
 36:9
 37:23,24,
 25 38:1,4,
 7,18,23
 51:12,18
 54:21
 62:15
 65:22
 66:14
 70:11,13,
 14 72:8,13
 75:7,8,22
 76:5

exhibits
 8:25 9:4
 12:7
 76:18,22

existed
 18:23
 22:11

existence
 22:13

expect  39:18

50:3 57:24

expectation
 19:14

expected
 21:4,8,11,
 14,18
 26:21,23
 27:6
 36:15,16

expects
 39:13

———————————
F
———————————

F-i-n-k-o
 30:17

facsimile
 20:3 26:5
 37:14

fact  32:1

fair  8:5,8
 27:9,10
 35:20,23

familiar
 9:12 19:24
 23:15
 72:16

fax  14:24

faxed  18:1

FCRA  50:1

FDCPA  50:1

February
 32:12
 34:6,21

44:12,13
 52:22
 53:3,10,
 20,25
 62:7,8

federal  6:11
 39:15

fees  29:17
 30:15

felt  13:2
 48:9

field  57:14,
 18

fields  57:11

file  12:25
 13:16,25
 14:11
 16:25
 17:2,6
 19:13
 31:8,18
 53:22 54:4
 55:14
 58:19
 72:25 73:6
 75:24,25

filed  6:7
 13:21,23
 14:3 23:9
 28:17
 30:19,23
 31:4,7,11,
 14,23
 32:2,4,12
 70:20

72:18
 73:18

files  19:15
 50:19

filing  22:13
 28:8,22
 29:7

Financial
 62:24

find  44:2
 45:8 53:16
 56:20 58:5
 70:9

finding
 39:16

fine  5:6
 12:18
 24:10

finish  5:7

Finko  30:17
 31:13,15
 32:1 34:19
 35:5,8,12,
 17,19,21
 36:2

firm  12:15,
 17 14:10
 29:1 34:9,
 14 41:25
 42:10
 45:16,19,
 20 49:23,
 24 59:5
 60:7
 61:18,19

**TONYA HENDERSON on 01/25/2017**

64:16
65:1,14

**firms**  25:23
40:4 41:5
46:3 50:9
61:23
63:22
73:20
74:3,9,11,
21

**fist**  10:1

**flags**  37:6,9

**follow**
39:14,21

**follow-up**
75:3

**form**  9:22
10:4 13:17
14:4,14
17:7 18:19
19:6 27:20
28:24
30:20 31:3
32:16,23
35:9 39:4,
10 42:12
43:3,22
44:23
46:25
47:12,19
48:16
49:1,10,17
50:11,15
51:3 52:1
65:7 69:20
73:9,24

74:5,14

**forward**
17:22,23
21:2 22:7
26:22
66:7,12

**forwarded**
18:9,13,18
19:3,4
21:16
22:15,25
26:17 33:2
38:14,20

**Foster**  9:22
10:4 13:17
14:4,14
17:7 18:19
19:6 27:20
28:24
30:20,24
31:10,22
32:8,16,23
33:8,12
35:9 38:5
39:4,10
42:12
43:3,22
44:23
46:25
47:12,19
48:16
49:1,10,17
50:11,15
51:3 52:1
65:7 69:20
73:24
74:5,14,22

75:1,3,6
76:12,19,
21

**FOSTSER**  73:9

**found**  53:13,
14

**foundation**
31:5,25
48:17

**front**  13:14
75:22

**FTM**  62:22

**FTP**  17:24

**fully**  6:3

**funding**  6:6,
9,15 7:13,
14 8:12,
14,15 9:25
10:11
12:4,20,22
13:11
16:14 20:9
23:11
24:5,12,
14,16,21
27:4 28:9
29:8,16
34:5 73:3

_____

**G**

**gave**  40:14

**give**  5:11
10:24
21:5,8

40:1 47:17
50:5

**giving**  4:20

**good**  14:24

**Granting**
16:15

**grow**  16:5

**guess**  8:24
9:10 14:16
16:3 31:2
39:12
40:19,21
48:1 52:7
65:11
74:11

**guessing**
71:21

**guideline**
30:6

**guidelines**
30:7

**guys**  58:13

_____

**H**

**hand**  61:1

**handle**  25:21
40:25

**handled**
44:17

**handling**
39:22

**happen**  42:2

**TONYA HENDERSON on 01/25/2017**

**happened**
36:21 59:3

**hard** 32:18
52:3 76:17

**Hasenmiller**
12:11,13
20:4

**Hawthorne**
60:8,9

**head** 4:22
32:8

**hear** 4:20
8:17 33:3
62:11

**Henderson**
4:7 75:7

**hereto** 4:2,
4,6

**Hey** 42:1

**hindsight**
14:6

**hire** 62:5
64:15,19
65:5

**hired** 43:20
48:13,20
64:2,4,9,
12 72:4,24
73:6 74:12

**hires** 11:20

**hiring** 65:14
71:25

**history** 4:4

9:9 52:21
65:25
66:1,3,6,
11 75:11

**hold** 52:24
64:6

**holds** 17:16

**home** 55:5

**hour** 36:4

**hours** 5:22

---

**I**

**I-n-v-e-s-t-i-
n-e-t** 62:13

**idea** 56:17

**identify**
10:21
67:15

**Illinois** 6:8
12:5 23:10

**important**
21:21,23

**include** 47:4
67:9 76:18

**income** 30:4

**Incorporated**
6:10 42:5

**indebtedness**
68:9

**indication**
53:15

**indicators**

37:3

**inform**
36:11,12,
16

**information**
5:12 9:11
14:9,16
15:2,16
16:7 21:5,
9,10,16,18
22:4,22,23
26:4,10,24
27:1,7,15
29:21 37:1
39:18
41:2,20,
21,23
50:21
53:16 54:6
56:6,10,
16,18
57:2,15,25
58:9,13
59:16
61:7,8
69:14,18,
24 70:6
75:24

**informed**
36:19

**initial** 57:7

**initials**
56:14 57:6
76:3

**instance**
65:13

**interest**
61:14
63:16,18,
19,25

**inventory**
60:12

**Investinet**
62:10,13,
14 63:11
64:2,5,24

**issued** 12:4

---

**J**

**judgment**
16:15
18:14,23
24:18
25:4,9,10,
13,19,21,
22 34:10,
12,15
35:15
42:9,11,
16,18,24,
25 43:2,7,
11,13,15,
17,21 44:8
45:25
47:3,9,11,
25 48:3,5,
8 49:14
53:14
61:2,5
66:11
67:1,2,7,
8,9 68:8

**TONYA HENDERSON on 01/25/2017**

72:13
73:1,5,12,
17,21,23
74:7,9

June 9:19,
20 10:1
64:10 68:6
69:25

jurisdiction
40:25 46:7
48:10

jurisdictions
41:24

Jury 28:15

———————————
K
———————————

K's 33:14

kind 14:22
32:18 57:8
74:19

knew 35:17,
19

knowing
52:4,5

knowledge
10:12
30:24
35:11

Kylan 60:8,9

———————————
L
———————————

labeled
55:17

Lack 48:16

law 12:15
14:10
25:23 29:1
34:9 40:4,
23 41:1,25
45:16,19,
20 46:3
49:24 59:5
60:7 61:23
64:16
65:1,13,14

laws 39:14
49:25 50:4

lawsuit
12:25
22:14 31:6
40:23

lawyer 21:22

lawyers
39:13

LCO 52:22,
25 53:5

learn 22:10

learned
22:12

Leave 37:23

leaving
43:24

left 70:11
74:23

legal 13:24
20:3 21:13
23:24

27:3,23
28:20
29:18,25
30:1,3,8
46:7 52:23
53:5,13,14
61:16
67:11,19,
20 68:10,
15

legally
49:13,15,
19 50:5
73:14

Leibsker
12:11,14

letter 20:2,
12 21:3,6,
9,12 22:7,
10,13,15,
25 23:24
24:3
26:13,15,
17,19,22,
24,25
27:2,7,12,
14,18,19,
22 28:1,2
34:4,18,22
35:5,23
37:15
38:15,21
52:9,10

letters
11:8,14
37:19

liability
7:20

licensed
40:25

liens 33:1

limited 7:20

list 66:20,
21 76:9

listed 22:23
61:8 68:7,
8,10,12
76:6

litigation
7:15

LJO 53:9

LLC 6:7,10,
15 12:11,
14 20:9
23:11
61:17
62:10

LNVN033
65:23

local 39:15

locate 52:13

located
51:17

logic 44:18
53:9
58:24,25
59:22

long 46:21
64:21

**TONYA HENDERSON on 01/25/2017**

**looked** 13:22
  15:12 48:8
  74:1,8,19

**lot** 40:6

**lots** 32:19

**loud** 34:23

**Louis** 71:11

**LS** 66:25
  67:2

**LV** 26:17
  66:21

**LVNV** 6:6,9,
  15,22,24
  7:12,13,
  19,22,24
  8:4,6,10,
  12,14,15,
  21 9:15,
  18,20,25
  10:3,6,11,
  12,14
  11:1,4,8,
  11 12:4,
  20,22
  13:11,20
  16:14 20:9
  23:11
  24:5,12,
  13,16,21
  27:4 28:9
  29:2,8,16
  31:6,12,
  18,19 34:5
  55:3 66:8
  73:3

**LVNV'S**
  11:14,17

**LVNV002**
  55:23

**LVNV003** 58:6

**LVNV004**
  62:15

**LVNV032**
  52:19

**LVNV037**
  66:14

**LVNV055**
  68:21

**LVNV056** 68:7

**LVNV073**
  11:25 68:8

**LVNV074** 13:6
  20:14

**LVNV075** 68:9

**LVNV076**
  68:11

**LVNV078**
  16:10

**LVNV079**
  19:18
  38:12

**LVNV32** 75:8
  76:5

———————
**M**
———————

**made** 13:25
  14:11 30:3

39:25
  41:14,16
  47:8,10,24
  48:3,5

**mail** 11:14
  18:2

**maintain**
  19:12
  33:2,3

**maintained**
  18:15 70:8

**make** 5:18
  43:25 50:7

**makes** 41:5
  58:25

**making** 8:24

**manage** 7:2,
  14

**management**
  44:19
  59:23
  60:12
  62:25

**manages**
  6:23,25
  21:24

**managing**
  7:8,9,10

**manner** 5:3

**manual** 46:10

**March** 64:7,
  8,11,23

**mark** 36:4

65:19

**marked** 9:5
  10:20
  11:22 23:4
  46:22

**marks** 4:1,3,
  5

**master** 10:7

**matter** 35:1,
  2,22

**matters** 41:1

**meaning**
  75:25

**means** 18:3
  32:13 47:6
  48:24
  56:10
  60:5,24
  61:3,4
  62:22
  67:13
  69:6,9

**medicines**
  5:17

**memorandums**
  42:3

**memos** 41:24

**methods**
  50:13

**Michael** 20:4
  56:23

**middle** 5:8

**Miller** 34:4,

**TONYA HENDERSON on 01/25/2017**

7,11,17
35:4,8,14,
16,18,20
36:11,16,
19 37:13,
19 39:1
40:14,16,
18,22
42:24
43:12,14
70:24
71:2,18,
21,22
72:1,2,5

**mind**  5:15

**minute**  59:19

**minutes**
74:22

**Misstates**
43:4,22
50:16

**ML-192307**
20:10

**MO**  71:13

**months**  46:19

**Moore**  12:11,
14

**move**  44:5

---
**N**
---

**named**  42:21

**National**
69:16,19,
23

**Nations**  6:10
23:11
42:5,25

**needed**  19:16

**nod**  4:22

**Northern**  6:8
23:10

**notate**  36:24
39:2,8,13

**notated**
27:15,16
37:7 57:22

**note**  37:3,
10 51:13
58:3,20,22
59:1,12
60:1,2,5,
21

**noted**  22:17

**notes**  10:20
42:20
51:18,23
52:12
57:20,24
58:8,22,23
59:18
60:2,3,13,
14,17,23
75:21

**notice**  4:16
19:11 28:8
29:7

**notification**
76:1

**NRC**  42:6,8,
10 43:1,16
44:7,22
45:3,5,7,
13,18,24
46:13,24
47:2,14,
15,24
48:8,14
49:4,8,12
50:7,8,13,
14,18,22,
25 51:16,
23 52:11
53:16,17,
18 54:7,13
55:8,20

**number**  20:10
55:1,3,5,
7,11,13,
18,20
56:24 73:7

---
**O**
---

**object**  9:22
10:4 13:17
14:4,14
17:7 18:19
19:6 27:20
28:24
30:20 31:3
32:16,23
35:9 39:4,
10 42:12
43:3 44:23
46:25
47:12,19

48:16
49:1,10,17
50:11,15
51:3 52:1
65:7 69:20
73:9,24
74:5,14

**objection**
31:22
43:22

**obtained**
53:15

**occurred**
15:17

**October**
23:25 66:7

**official**
30:5

**Onbase**
66:16,18

**One's**  59:18

**open**  67:17

**opening**
67:16

**operated**
16:1

**orally**  4:20

**order**  15:15
16:13
18:13
49:14 68:6

**original**
69:15

**TONYA HENDERSON on 01/25/2017**

owned   9:25

owner   7:24,
  25 8:20
  9:21

owns   6:24
  8:2

————————————

          **P**
————————————

P.C.   34:5,8
  36:11,16
  59:9 65:13
  71:18

p.m.   76:25

paralegal
  7:8,9,10

paralegals
  7:14

part   14:25
  62:25 63:1
  68:24

parties   47:7

payment
  30:15
  61:6,8
  69:7,10,11

pdf   76:17

people   41:2
  56:14

percent   30:5
  42:22

performed
  7:4

period   44:4
  54:18

person   31:15

personally
  45:7

pertaining
  17:3,5
  18:5

phone   11:17
  14:24 26:5
  37:14
  46:24
  52:10
  54:23,25
  55:3,5,7

picture
  10:11

place   7:2
  11:17
  14:21
  15:23
  46:1,6,13,
  15,17,21,
  24 47:5
  48:7 59:1
  61:22 62:2
  75:20

placement
  54:19
  65:25
  66:1,3,5,
  6,11

places   44:16
  59:12

Plaintiff

6:7 71:4

PMT   69:5,8

point   32:2
  50:7 63:23

policies
  39:20,25
  40:1,5,11,
  15 41:4,6,
  8,10,16
  46:1,4,18

portion
  62:23

position
  35:1

post   61:2,
  10

poverty   30:6

practice
  40:23

preparation
  67:18

prepping
  16:19

present   4:18

previous
  63:11

prior   16:21
  25:21 62:9
  64:10,11

pro-bono
  29:19
  30:2,9

problem
  14:20
  15:17,18

procedure
  40:15
  46:10

procedures
  39:20
  40:2,5,11
  41:4,6,8,
  10,17
  46:4,12,19

produce
  40:17,18

professional
  40:24

program
  29:19
  30:2,9

provide   7:23
  50:20

provided
  12:7 26:4,
  9 53:8
  55:7,19
  57:15
  69:24

provider
  29:18
  30:1,8

providing
  10:3

pulled   59:4

purchase

**TONYA HENDERSON on 01/25/2017**

10:13
69:25

**purchased**
8:13

**Pursuant**
29:21,22,
23

**put** 22:20
23:1 37:16
41:23
56:6,18
57:2,22

**puts** 59:22

---

**Q**

**question** 5:3
10:9,10
15:18
27:20 31:3
32:16
42:12
43:3,24
44:1 47:19
50:15
57:12
73:24
74:5,14
75:4

**questions**
4:16,25
5:13,19
6:2,5
70:10 75:2
76:14

**quick** 58:12

---

**R**

---

**ranging** 7:15

**reach** 35:2

**reached** 42:1

**read** 29:20
31:2 32:8
34:23

**reason** 6:1
21:17,20
48:9 51:8
59:23

**Rec'd** 20:24

**recall**
71:15,24,
25

**receive**
11:2,4
15:15 17:9
26:24
28:21 30:7
32:22

**received**
20:17,20,
21,22,23
26:13,14
27:12,13
32:14
37:14,16
57:25
66:10
69:13
75:23 76:1

**receives**

32:19

**RECESS** 65:20

**recognize**
15:1

**recognizes**
63:8

**record** 4:22
18:15
19:12,13
25:11 31:1
36:6 38:3
70:14 72:8

**recorded**
4:17

**records** 8:25
11:7 16:19
26:6,7
44:9 70:8

**Recovery**
6:10 23:12
42:5

**redacted**
58:13

**refer** 24:8
42:6

**referenced**
35:1

**referencing**
20:11 24:4

**referring**
12:17
20:6,8,13
58:4 67:4,
6

**reflect**
36:25 61:1

**reflected**
57:16

**regard** 51:16

**related** 40:5

**relationship**
6:21
12:19,21
24:7,11
42:4,8

**relay** 15:2

**relaying**
41:1

**remember**
5:11 75:14

**rephrase**
39:7

**report**
15:12,13
24:18
29:19

**Reporter**
4:1,3,5,
18,21
76:15,19,
23

**repository**
17:10,11,
14 66:18

**represent**
12:22
24:13,16,
20 34:25

**TONYA HENDERSON on 01/25/2017**

36:2 73:3

**representation**
13:24
22:18
27:14,18
28:2 29:18
36:17
44:21 45:6
46:2 52:8
57:21

**representative**
7:13 31:7

**represented**
21:22
27:8,16,23
36:13,20
37:12
45:15 76:1

**representing**
21:15 29:2
31:12
35:21 45:2

**represents**
21:13 27:3

**requests**
7:16

**require**
18:4,8,12
39:1,8

**required**
18:18 19:2
21:2 50:2
73:14

**requirement**
19:15

**resolution**
35:3

**response**
5:12

**respor** 17:18

**rest** 69:18

**result** 30:13

**resurgent**
6:19,20,
21,23 7:4,
7,12 10:2,
7,10
11:19,20
12:21,24
13:1,4,13,
23 14:2,8,
12,19
15:8,20
17:20
18:4,8,9,
12,18,24
19:4,11,
14,16
21:3,4,7,
10,14,16,
17,24
22:3,8,10,
12,16,17,
19,20 23:1
25:14,15,
17,20
26:1,18,
19,21,23
27:6,11,
13,14
28:1,21

32:14,19,
21 33:2
35:7,11
36:12,15,
19,21,23
37:2,15,18
38:15,21
39:1,8,13,
21 40:1,5,
10,20,22
41:4 42:5,
7 43:6,10,
12 44:15,
20,25
45:4,9
46:1,5,6,
20,23
47:2,17,23
48:7 49:8,
12,15,23
50:3,8,10,
22,25
51:16,24
54:8 55:4,
13,19
60:11
61:22,24
62:5 64:1,
4,9,19
66:22
69:13
71:14,24
72:24
73:16
74:13 76:2

**Resurgent's**
41:15

**retain** 17:20
25:20
40:24
43:20

**retained**
12:22
24:13,15,
20 25:3,8,
12,14,15,
17,18
34:9,11,14
42:8,10,
17,23,24
43:1,6,9,
12,14,16,
25 44:3,7,
11 47:7
61:24
73:3,11
75:18

**retains** 46:5
49:23
61:22

**review** 11:6
23:18
33:25
37:18,19,
22 44:9
47:7
51:22,23

**reviewed**
14:8
67:22,25
72:17
73:16

**reviewing**

**TONYA HENDERSON on 01/25/2017**

20:15

**reviews**
  10:24
  13:13,19

**revise**
  72:13,25
  73:17

**revised** 67:9

**Rodriguez**
  28:19

**rolled** 59:5,
  7

**Ronald** 70:23
  71:1,2,17,
  21 72:1,2,
  5

**row** 56:22
  63:3 70:1

**Rule** 29:23
  30:13

───────────

        **S**

**sarcastically**
  55:16

**scanned**
  67:14

**scratch**
  39:25
  41:15

**Sears** 69:16,
  19,23

**section**
  17:15

57:25
58:2,3,4,
22 60:23,
24 61:7,9
75:10

**sections**
  61:10

**seek** 13:23

**send** 11:8
  15:15 18:4
  19:13
  34:17
  50:19

**sends** 29:2
  37:19

**separate**
  44:3 65:5

**separated**
  33:9

**September**
  20:2,24

**server** 66:9

**service** 7:2,
  22 64:2,5

**servicer**
  11:14,19
  13:20 50:2
  53:8,12,21
  54:4,15,17
  62:9 63:1,
  11 64:10,
  25 65:4,14
  66:6,10
  70:4 72:4

75:23,25

**servicers**
  41:5 74:12

**services**
  6:19,20,
  21,23,24,
  25 7:7
  10:2,3
  11:17
  21:24
  29:18
  30:1,7,8
  39:14

**servicing**
  10:2,7
  40:3 49:23
  61:18,19,
  21 62:6
  63:22
  64:22

**settle** 73:23
  74:4

**settled** 74:9

**settlement**
  7:17 74:20

**settlements**
  74:13

**settling**
  74:7

**shake** 4:22

**sharing** 16:7

**short** 12:16
  59:21
  60:25

**shortly** 12:8

**show** 52:12,
  25

**shows** 9:10

**sick** 5:24

**side** 45:11
  76:4

**signature**
  57:5

**signed** 30:17

**significant**
  18:16,17,
  22,25

**simple** 75:3

**sir** 76:10

**sit** 19:8

**site** 17:24

**sitting**
  42:19
  45:14
  71:15

**slower** 18:2

**small** 33:15

**software**
  9:10 17:15
  50:18,19
  66:18

**Solutions**
  61:17

**sort** 35:2

**source** 14:23

**Maxene Weinberg Agency,**
                        **a Huseby Company**

TONYA HENDERSON on 01/25/2017

**speak** 4:19
39:9 45:17
46:7 54:8

**speaking**
52:6,7

**speaks** 35:23

**specific**
19:10

**specifically**
74:8

**sponsor**
29:19

**sponsored**
30:2,8

**St** 71:11

**stamp** 20:21
21:1 57:8

**stamped**
11:24 13:5
16:9 19:17
20:13 23:3
38:11
55:22 57:9
62:15
65:23
66:14
68:21

**stands** 62:24
75:18

**start** 69:3

**started** 53:6

**starting**
52:23

**starts** 29:22

**state** 39:15
71:10 73:7

**statement**
8:5,8 27:9

**statements**
11:2,4

**status** 15:2
37:5,11
52:14,17,
21 54:6
58:1
75:11,14,
17,20
76:6,8,9

**stay** 13:14

**Steeno** 34:5,
7,11,17
35:4,8,14,
16,19,20
36:11,16,
19 37:13,
19 39:1
40:14,16,
18,23
43:14
71:18,21

**sticking**
72:2

**stored** 17:6
51:9

**subsection**
30:16

**sue** 13:2

30:14
31:21
73:22

**sues** 31:19

**SUF** 53:21
54:2,12
75:25

**suit** 14:11

**suite** 56:24
71:8

**summons** 4:5
12:3 68:8,
9,11,12
70:18
72:13,25
73:17

**support**
50:20

**Supreme**
29:23
30:13

**sworn** 4:7

**system** 15:8,
14,15
17:16,18
22:21 23:1
26:3,8,11,
20 36:24
37:4,7,9
40:7
44:17,19
50:14
51:7,9
55:17
57:3,23

58:25
59:11
61:13
62:22
63:8,21,
23,25

**systems**
15:1,5,6
54:8

_____

T

**tab** 36:25
54:2 60:19
68:10

**tabulate**
61:13

**taking** 4:12
5:17

**talk** 14:19,
20 15:1,6,
7

**talked** 46:10
75:14

**talking** 8:15
26:8 65:4

**talks** 39:2

**TCPA** 50:1

**team** 7:14
44:19

**technology**
16:5

**telling**
31:24

**Maxene Weinberg Agency,**
                                **a Huseby Company**

**TONYA HENDERSON on 01/25/2017**

ten-minute
 36:3,5
 65:19

terminology
 18:24

testified
 25:1 43:19
 51:12

testifies
 4:8

testimony
 43:4,23
 50:16
 75:13,15

thing  8:3,17
 31:14
 36:23
 40:22
 41:21
 59:20

things  37:6
 41:24 48:3
 56:14

thought  6:6
 74:19

time  16:1
 19:3,4
 33:23
 35:12
 44:1,4
 50:7
 54:15,17,
 18 55:6
 57:8,9
 58:24

 74:25

timeframe
 43:24 44:2

times  44:4

title  7:6

Titled  6:9

today  4:12,
 18 5:19,24
 6:2 19:9
 42:19
 45:14,21
 67:23 68:1
 72:3

today's  34:1

told  54:16

Tonya  4:7

top  30:22
 32:4,13

topics  4:16

Torres  6:9
 10:6 12:4
 13:12
 16:14 20:9
 21:13
 22:18
 23:9,11
 24:6 27:4,
 5,8,23
 28:10,19
 29:8,16
 30:4,14
 34:5,25
 35:22
 36:2,12,20

 45:2 46:24
 47:5,15,18
 49:9 55:4,
 14

Torres'
 8:13,21
 9:15,21
 10:1,11,16
 11:5 15:23
 16:25
 17:2,4,5,6
 25:16
 36:17
 42:11
 43:7,10,
 13,16,20
 44:8,20
 45:1,23
 46:13 49:7
 51:1,17,24
 55:7 62:6
 64:2,5,22
 65:14 70:4
 73:22 74:4
 76:6

Torres's
 9:18 45:5

track  63:22

tracked  70:5

tracks  63:21

trans  61:10,
 11 63:15

transaction
 61:11
 62:24

transmittal
 34:4

trial  16:13
 18:12

truthfully
 6:3

turn  11:21,
 24 13:5
 16:9 19:17
 23:3,4
 28:5,11
 29:9,12,13
 46:22
 48:21
 75:7,8

twenty  74:22

two-hour
 65:18

type  7:18,
 20 11:2
 16:24
 17:21
 21:18 22:3
 32:15,21
 46:9 48:3
 51:15
 58:16
 67:1,5,12

types  60:1,2
 66:20

─────────
       U
─────────

Uh-huh  8:7
 13:8 17:12
 19:20

**TONYA HENDERSON on 01/25/2017**

53:4,7,11
54:1,3,5
59:2,13
60:10
63:7,10
72:10

**undersigned**
28:18
29:24

**understand**
4:19,23
5:1,2,18
9:24 40:9
57:13

**understandable**
5:3

**understanding**
34:24 36:1
40:10
45:18,21
47:16 48:1
63:12

**update** 53:22
54:4 75:25

**updates**
69:24

**upload** 17:24

**uploaded**
26:10

---
                    **V**
---

**verifications**
7:17

**verified**

61:1

**version**
15:25
16:1,2,4

**versus** 12:4
13:11
16:14 20:9
23:11 24:6
27:4 28:9
29:8

**Virginia** 6:9
12:4 13:12
16:14 20:9
21:13
23:10 24:6
27:4
28:10,19,
20 29:8,16
30:4,14
34:5,25

---
                    **W**
---

**wage** 70:17

**wait** 33:11,
12

**waiver** 29:17

**wanted** 14:20
61:4 69:2

**Wayne** 60:17,
18

**ways** 15:22

**Wood** 20:4
56:24

**words** 18:21
49:21,22

**work** 7:3,15
10:8 40:4
46:18
48:11,12,
15 51:12
55:13,17

**worked** 48:19

**working** 45:8

**works** 40:7
50:3 71:18

**write** 37:22

**wrong** 17:18

---
                    **Y**
---

**years** 46:21