IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VIRGINIA TORRES, | ) |
| Plaintiff, | ) No. 16 C 6665 |
| v. | ) |
| | ) Hon. Virginia M. Kendall |
| LVNV FUNDING, LLC, and NATIONS RECOVERY CENTER, INC., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are cross-motions for summary judgment filed by Plaintiff Virginia Torres ("Torres") and Defendants LVNV Funding, LLC ("LVNV") and Nations Recovery Center, Inc. ("NRC"). The motions seek judgment as a matter of law on Torres's lawsuit alleging that the Defendants called her twice on the phone in an effort to collect a debt when represented by counsel in violation of the Fair Debt Collection Practices Act ("FDCPA" or "the Act"), 15 U.S.C. §§1692, 1692c (1977). For the following reasons, the Plaintiff's Motion for Summary Judgment is granted in part against Defendant LVNV, and the Defendants' Motion for Summary Judgment is granted in part as to NRC. [55, 70.]

### FACTS

The following facts are undisputed unless otherwise indicated.

**I. The Parties**

Virginia Torres, a resident of Chicago, Illinois, opened Sears credit card account and made purchases. (Dkt. No. 57, at ¶¶ 1, 10; Dkt. No. 72, at ¶ 4.) Torres's husband at the time also used the same Sears credit card. (Dkt. No. 72, at ¶ 5.) LVNV is a Delaware company with a registered agent in Illinois. (Dkt. No. 57, at ¶ 2.) LVNV's master

1

servicing agent is Resurgent Capital Services, L.P. (Dkt. No. 72, ¶ 8.) At times prior to this litigation, Resurgent placed Torres's credit card account – then owned by LVNV - with Blatt, Hasenmiller, Leibsker & Moore, LLC ("Blatt"); Bleecker, Brodey & Andrews ("Bleecker"); and Miller and Steeno ("Miller"). (*Id*. ¶ 9.) Resurgent ultimately placed Torres's account with NRC, which is a Georgia corporation with a registered agent in Illinois. (*Id*. ¶¶ 3, 12.)

## II. The Debt and Collection Efforts

Torres and her husband used the card only for personal purposes – specifically, to buy auto-parts for her husband's car. (Dkt. No. 57, at ¶ 10; Ex. A, at ¶ 2; Ex. D, at 31-32; Ex. E, at ¶¶ 36-37, 40). The Defendants do not dispute that the Sears card belonged to Torres and that she and her husband used it to make purchases, but they dispute whether the purchases were for personal as opposed to business-related purposes. (Dkt. No. 68, ¶ 10.) Over time Torres could no longer make payments on the credit card and the account went into default. (Dkt. No. 57, ¶ 11.) Subsequently, the debt was charged off and sold to Sherman Originator, LLC ("Sherman") - an affiliate of LVNV. (Dkt. No. 72, at ¶ 6.) In June 2003, LVNV acquired the debt from Sherman. (Dkt. No. 57, at ¶ 12; Dkt. No. 72, at ¶ 7.) In December 2005, Blatt – the first servicer for LVNV – filed a lawsuit against Torres in order to collect the debt, and a state court entered a default judgment on June 22, 2006. (Dkt. No. 57, at ¶¶ 14-15; Ex. E., at ¶ 7.) In August 2013, Bleecker – the second firm servicing the LVNV account – filed a petition for revival of judgment against Torres and, in response to the summons for that state action, Torres retained Community Lawyers Group to represent her in the matter. (*Id*. ¶¶ 17-18; Ex. E., at 10, 15.) In November 2014, Miller took over collection efforts as the third servicer for the LVNV

account. (*Id.* ¶ 21; Ex. F, at 5.) Then, on February 3, 2015, in response to the second request for a revival of judgment, counsel for Torres entered an appearance in state court. (*Id.* ¶ 22; Ex. F, at 5.) Regardless, the state court granted revival of the judgment on August 14, 2015. (*Id.* at 7.) Finally on March 3, 2016, NRC received the Torres account in order to collect the judgment. (Dkt. No. ¶ 27.)

### III.   Communications with The Plaintiff, Counsel, and the Defendants

In September and October 2013, Torres's lawyer notified Blatt and Bleecker that Torres had counsel in the state collection action and any other debt-related matters, and that the she disputed the debt. (*Id.* ¶¶ 19, 20.) In addition to filing an appearance in court, Torres's lawyer served notice of appearance on Blatt, Bleecker, and Miller. (*Id.* ¶ 22.) Miller, the third firm assigned to collect the debt as of February 16, 2015, sent a letter to Torres's counsel acknowledging her representation in state court. (*Id.* ¶ 23.) On March 7, 2016, NRC contacted Torres three times to inform her of the outstanding debt. (*Id.* ¶ 29.) On March 22, 2016, NRC again called Torres attempting to collect the debt. (*Id.* ¶ 31.) During at least one call, NRC left a voice message indicating that the purpose for the call was the collection of a debt. (*Id.* ¶ 30.)

### IV.   Defendants' Debt Collection Policies and Procedures

Both LVNV and NRC hold a collection agency license from the State of Illinois. (*Id.* ¶¶ 5, 8.) LVNV's master servicing agent, Resurgent, placed accounts with servicers to collect outstanding amounts due. (Dkt. No. 72, at ¶ 8.) As a part of the collection process Resurgent had a system called AMCS, which is an electronic system used both to store and share information with servicers retained to collect the accounts. (Dkt. No. 62, at 15-17.) For instance, if a servicer had a problem that required information from

Resurgent, the servicer could communicate with Resurgent via the AMCS system. (*Id.*) Examples of information stored by Resurgent included items like the state court trial call order granting judgment in the matter of LVNV Funding versus Virginia M. Torres. (*Id.*)

Resurgent had policies and procedures whereby they require lawyers and servicers to comply with all state and federal laws, and an expectation that notification of attorney representation be sent to Resurgent in order to update its accounts. (*Id.* at 39.) Further, Resurgent provided servicers with information about how the communication system works, and expected its servicers to maintain policies and procedures that comport with policies established by Resurgent. (*Id.* at 40.) However, Resurgent did not always inform law firms that serviced debt accounts "how to practice law within the lawsuit." (*Id.*)

NRC received the LVNV account via Resurgent in order to collect on Torres's dormant judgment. (Dkt. No. 72, Ex. 4, at 8.) As a part of its procedures, NRC provided all of its employees with a memo regarding how to deal with debtors who have attorney representation. (*Id.* at 29.) They also conducted weekly training covering a range of topics, including what to do in the event an attorney represents a consumer, so that all employees are apprised of the company policies and procedures. (*Id.* at 30.) NRC used a program called Latitude in order to record information about debtor accounts under its assignment – including information as to whether a debtor had counsel. (*Id.* at 32.) NRC also had a policy that a consumer's representation of counsel be lodged in their system if either the consumer or the creditor notified NRC of attorney representation, and further that the account be pulled and placed in a "holding queue" so that the account is removed from the floor. (*Id.* at 32-33.) NRC did not pull the Torres account because neither

Torres nor LVNV notified them that she had counsel. (*Id.*) It was NRC's policy to contact consumers in order to collect a debt based purely on placement by a servicer with their firm on the belief that the accounts they received are accounts that did not involve a consumer represented by counsel. (*Id.* 35.)

## **LEGAL STANDARD**

Courts grant summary judgment where the movant shows that no genuine dispute of material fact remains and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine' only if a reasonable jury could find for either party." *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (internal quotation marks and citation omitted). Courts appropriately grant summary judgment where "no reasonable jury could rule in favor of the nonmoving party." *See Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 (7th Cir. 2016) (citation omitted). On cross-motions for summary judgment, each movant must satisfy the requirements. *See Cont'l Cas. Co. v. Northwestern Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). Therefore, when considering Torres's Motion, the Court views all evidence in the light most favorable to LVNV and NRC, and when considering the Defendants' Motion, the Court views all evidence in the light most favorable to Torres. *See e.g., Hinsdale v. Village of Westchester, Illinois*, No. 15 C 4926, 2017 WL 991489, at *3 (N.D. Ill. Mar. 15, 2017) (citing *Int'l Bhd. Of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002)). Nonmoving parties must still put forth enough evidence to support reasonable inferences, as courts "draw only the reasonable inferences" and "are not required to draw every conceivable inference from the record." *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009)

(internal quotations and citations omitted); *see e.g., Cordon v. Centex Homes*, 835 F.Supp.2d 543, 548 (N.D. Ill. 2011).

## DISCUSSION

Congress established the FDCPA in order to scrutinize and deter actions by debt collectors from engaging in abusive, deceptive, disruptive and unfair debt collection practices. 15 U.S.C. §1692 (a)-(e); *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1720 (2017). To apply the plaintiff must be a consumer who owes a debt that qualifies under the applicable definitions set forth under the FDCPA. *See generally*, 15 U.S.C. § 1692a.

### I. FDCPA Requirements

A consumer is "any natural person obligated or allegedly obligated to pay any debt." *Id*. at (3). A debt is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction ... primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id*. at (5). LVNV and NRC oppose Torres's position that she is a consumer who owes a debt as defined by the FDCPA. (Dkt. No. 67, at 2-3; Dkt. No. 71, at 3.)

A debt collector is as a person using the interstate commerce or mails "in any business the principal purpose of which is the collection of debts," *or* "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." § 1692a(6) (emphasis added). The term debt collector does not include "any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control ... if the principal business of such person is not the collection of debts." *Id*. at (6)(B). Both in opposition

6

to Torres's Motion for Summary Judgment and in their own Cross-Motion for Summary Judgment, LVNV and NRC take the position that they are not debt collectors as defined by the FDCPA. (Dkt. No. 67, at 2; Dkt. No. 71, at 3.) All of the Defendants' arguments regarding the FDCPA prerequisites fail for the following reasons.

*a. Torres is a Consumer and the Debt Obligation Falls within the FDCPA*

There is no question that Torres was a consumer under the FDCPA. A consumer is the person claimed to owe a debt. *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 773 (7th Cir. 2007). Although Torres, in her deposition testimony, is adamant that the debt was not hers because the purchases were made for her husband's car, she admits that she opened the account in her name and made purchases for items. (Dkt. No. 57, Ex. D, at 15-16, 31, 38, 40.) As Torres opened the account in her name and bore sole responsibility for making payments she is the person claimed to owe the debt – not her husband. *See, e.g., Smith v. Capital One Bank (USA), N.A.*, 845 F.3d 256, 259 (7th Cir. 2016) ("[o]rdinarily, one's credit card debt is one's own"). Furthermore, LVNV's efforts in state court to obtain a judgment against Torres imply that she is a "natural person obligated or allegedly obligated to pay any debt." *See* § 1692a(3); *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 943 (7th Cir. 2011); (Dkt. No. 57, Ex. F., at 1).

The debt in question also satisfies the "consumer debt" prerequisite that the obligation to pay money arises out of a transaction "primarily for personal, family, or household purposes." § 1692a(5). Torres asserted, both in a sworn statement and in deposition testimony, that she and her husband used the Sears credit card to make purchases for personal purposes. (Dkt. No. 57, Ex. A, at 1; Ex. D, at 30). A plaintiff's personal knowledge of how she used the [credit card], as established in deposition

7

testimony and a sworn declaration, is "competent evidence" that the transactions are for personal, family, or household purposes. See Fed. R. Civ. P. 56(c)(4); *Cocroft v. HSBC Bank USA, N.A.*, 796 F.3d 680, 686 (7th Cir. 2015); *see e.g., Washington v. Portfolio Recovery Associates, LLC*, 211 F.Supp.3d 1041, 1049 (N.D. Ill. 2016) (plaintiff's deposition and sworn statement testimony is competent evidence supporting that a credit obligation was for personal, family, or household purposes).

In challenging the specific kinds of purchases made, the Defendants do not provide any evidence contradicting Torres's statements; they simply argue that her "self-supporting" statements do not sufficiently show that all of the debt obligation at issue was for family, personal, or household purposes. (Dkt. No. 67, at 2-3.) In failing to provide any evidence contrary to Torres's testimony, and as her statements comply with the requirements under Rule 56, the Defendants have not established the existence of a genuine factual dispute. *Cocroft*, 796 F.3d at 686. As such, Torres satisfies the FDCPA prerequisites in that she is a consumer and her debt is consumer debt.

b. *LVNV and NRC Status as Debt Collectors*

Proving a violation of the FDCPA further requires a plaintiff to show that the opposing party is a debt collector as defined by the Act. *See* 15 U.S.C. § 1692c(a) ("[w]ithout prior consent of the consumer given directly to the *debt collector* … a *debt collector* may not communicate with a consumer in connection with the collection of any debt") (emphasis added). "The [FDCPA] only applies to debt collectors." *See Grubek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010). In applying the definition under § 1692a(6), the Defendants argue LVNV is not debt collector under the FDCPA because they purchased a defaulted debt that originated with another entity (the issuer of

8

the Sears credit card) and that LVNV – via NRC - is now simply attempting to collect Torres's debt for its own account. (Dkt. No. 67, at 2; Dkt. No. 71, at 3.) As to NRC, the Defendants argue only that Torres is not a consumer and that the debt is not consumer debt. (Dkt. No. 67, at 2-3; Dkt. No. 71, at 3.) Both arguments fail and they are debt collectors under the FDCPA.

   1. LVNV is a Debt Collector Under the First Prong of § 1692a(6)

As a starting point, the status of the alleged debt makes LVNV a debt collector. This is so because parties that seek to collect a debt "that was in default when acquired" are debt collectors under the FDCPA. *See Ruth v. Triumph Partnerships*, 577 F.3d 790, 797 (7th Cir. 2009) (quoting *McKinney v. Cadleway Properties*, 548 F.3d 496, 501 (7th Cir. 2008). Torres states, as a result of financial circumstances, that she became unable to make payments on the alleged debt and so the account went into default. (Dkt. No. 57, at ¶ 11.) The Defendants do not dispute this fact, (Dkt. No. 68, at ¶ 11), or that the alleged debt in default was ultimately acquired by LVNV. (*Id.* ¶ 12.) Thus, LVNV is a debt collector by seeking to collect a debt already-defaulted.

The Defendants attempt to get around this assertion by citing *Henson v. Santander Consumer USA Inc.*, a 2017 Supreme Court decision holding that a third party car loan and auto refinance company who purchases a debt from a primary creditor is not a debt collector under the second meaning of "debt collector" as defined by § 1692a(6). 137 S.Ct. at 1718, 1721-22 (2017); *see* (Dkt. No. 67, at 2; Dkt. No. 71, at 3). The *Henson* court concluded that the second definition of § 1692a(6) does not apply to a third party who purchased a debt "for its own account," and who is not seeking to collect the debt owed to another party. *Id.* at 1721-22, 1724. In short, because the Respondent in *Henson*

purchased the debt for its own account from the primary creditor it was not a "debt collector" under the second definition of § 1692a(6). *Id*. at 1722. It is worth noting, however, that *Henson* only considers the second definition of §1692a(6) and the Supreme Court declined to address the alternate definition. *Id*. at 1721 ("the parties briefly allude to another statutory definition of the term 'debt collector' ... But the parties haven't much litigated that alternative definition and in granting certiorari we didn't agree to address it either"). Particularities in this current matter, as compared to the debt collector in *Henson*, support why the reasoning in *Henson* does not apply to LVNV.

First, and in contrast to the posture in *Henson*, Torres argues that LVNV is a debt collector under the first prong of § 1692a(6). "Because LVNV's principal (indeed, only) business purpose is to purchase debts and then collect on them, they clearly qualify as debt-collectors under the first definition." (Dkt. No. 56, at 6.) Second, and also not mentioned in *Henson*, Torres points out that LVNV holds a collection agency license from the State of Illinois, which the Defendants do not dispute. (Dkt. No. 57, at ¶ 3; Dkt. No. 68, at ¶3; Dkt. No. 74, Ex. A.) Third, LVNV pursued collection of the outstanding debt by having its master servicing agent place the account with servicers. (Dkt. No. 72, at ¶ 8.) Finally, LVNV's own deposition witness admits that the only service LVNV provides is as a debt owner. (Dkt. No. 62, at 7-8.) Instead of providing any evidence to support the proposition that LVNV's principal purpose is something other than the collection of debts, the Defendants claim LVNV is not a debt collector because of *Henson*. (Dkt. No. 71, at 3.) But LVNV cannot hide behind *Henson* because Torres clearly sought to utilize the "principal purpose" of "debt collector" within § 1692a(6),

and she submits undisputed evidence that LVNV's principal purpose is the collection of a debt.

Based on the undisputed facts that LVNV sought to collect a debt that was in default when acquired, and because Torres sought to define LVNV as a debt collector under the first definition of § 1692a(6), LVNV is a debt collector under the FDCPA.

### 2. NRC is a Debt Collector

The Defendants provide little opposition to NRC's status as a debt collector - arguing only that Torres fails to satisfy the prerequisites of the Act. (Dkt. No. 67, at 2-3.) For the reasons already discussed Torres meets the consumer and debt requirements. The Defendants do not even dispute Torres's factual assertion that NRC is registered in Illinois as a licensed collection agency that acts, "in certain circumstances," as a debt collector. (Dkt. No. 68, at ¶¶ 6-8.) Furthermore, the Defendants admit Torres's debt "was ultimately placed with NRC to collect the account." (Dkt. No. 72, at ¶ 11.) Furthermore, the exception under § 1692a(6)(B) does not apply because LVNV and NRC are not "related by common ownership or affiliated by corporate control." As such, NRC is a debt collector given that § 1692a(6) defines a "debt collector" as "any business the principal purpose of which is the collection of any debts."

Having established that Torres is a consumer with a debt and that LVNV and NRC are debt collectors, the Court must next consider whether the Defendants violated the Act by making unlawful communications and whether they are subject to the bona fide error affirmative defense. *See* 15 U.S.C. §§ 1692c; 1692k.

**II.     FDCPA Violations and Affirmative Defenses**

The FDCPA makes it unlawful for a *debt collector* to communicate with a *consumer* without prior consent regarding the collection of any debt "if the debt collector *knows* the consumer is represented by an attorney with respect to such debt[.]" §1692c(a)(2) (emphasis added); *see Tinsley v. Integrity Financial Partners, Inc.*, 634 F.3d 416, 418 (7th Cir. 2011); *Jenkins v. Heintz*, 124 F.3d 824, 832 (7th Cir. 1997) ("[b]y law ... the collector must communicate with the consumer's attorney").  However as an affirmative defense, the FDCPA provides that a debt collector can avoid liability in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation: (1) was unintentional, (2) resulted from a bona fide error, and (3) occurred despite the debt collector's maintenance of procedures reasonably adapted to avoid such error.  15 U.S.C. § 1692k(c); *Ruth*, 577 F.3d at 803 (7th Cir. 2009); *see also Kort v. Diversified Collection Svcs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005).  Torres argues that LVNV and NRC both knew of her representation in the underlying debt collection action, (Dkt. No. 57, at 8-11.); while the Defendants dispute this contention and also argue that they are subject to the affirmative defense that the communications were the result of a bona fide error.  (Dkt. No. 67, at 3; Dkt. No. 71, at 3-6.)

   a. *NRC Knowledge of Representation Under the FDCPA*

In order to prove a communications violation, § 1692c(a)(2) requires that a debt collector have knowledge that counsel represents the consumer.  *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004).  The Parties do not dispute that NRC communicated directly with Torres four times and left at least one voice message while attempting to

collect a debt owned by LVNV.[1] (Dkt. No. 57, at ¶¶ 29-31). It is further undisputed that these communications occurred at a time when Torres had representation of counsel for the underlying state court action and for the purpose of challenging the collection of an alleged debt. (*Id*. ¶ 23.) But Torres is unable to provide any evidence suggesting that NRC knew of her representation when they placed calls to her to collect the debt. Instead, Torres argues that NRC should have known of her representation because LVNV was aware of the representation, and also because her representation in the underlying state court action was a matter of public record. (Dkt. No. 56, at 11.) However only a *creditor's* knowledge can be imputed upon agents, and NRC and LVNV are not creditors in this action, and so Torres cannot assert LVNV's knowledge upon NRC. *See Randolph*, 368 F.3d at 729. The evidence does not support a dispute of genuine fact as to whether NRC knew of Torres's representation. To the contrary, NRC's CEO – Paul Batallion – submits that LVNV never informed NRC that Torres had counsel. (Dkt. No. 72, Ex. 4, at 12.) What is more, Battalion states that NRC does not generally receive accounts involving consumers that are represented, and usually will stop all activity the moment they learn that an attorney is involved. (*Id*. at 35.) While it may be true that Torres's representation could have been known as a matter of public record, it does not prove that NRC knew that she had counsel. As noted, the debt collector must know, which is more than "should have known" or "had reason to know." *See* § 1692c(a)(2); *see e.g.*, *Cole v. Biehl & Biehl*, 1997 WL 733928, at *2 (N.D. Ill. 1997) (plaintiff on summary judgment must present evidence that defendant has actual knowledge, not merely that the defendant should have known). Torres's facts are insufficient to prove NRC had knowledge of

---

[1] Torres asserts that NRC left one voice message and the Defendants submit that NRC left two voice messages, but the number of messages left by a debt collector is not material for the purpose of establishing communications-related violations of the FDCPA.

13

representation, and she further does not cite to any case law suggesting that matters of public record establish knowledge. On this basis, NRC's lack of knowledge that Torres had counsel precludes application of the FDCPA. What remains are questions as to whether LVNV knew that Torres was represented by counsel and whether the communications were the result of a bona fide error or mistake.

  *b. LVNV Knowledge of Representation and Bona Fide Defense*

It is undisputed that LVNV's three prior servicers assigned to collect on the Torres account – whether for the purpose of obtaining a judgment, in reviving the judgment, or in pursuing garnishment liens in post-judgment – were aware that Torres had counsel. (Dkt. No. 57, at ¶¶ 14-20, 22-23.) When servicing agents – such as Blatt, Bleecker, and Miller – are acting both within the scope of their employment and for the benefit of LVNV, their knowledge is imputed upon LVNV. *See, e.g.*, *U.S. v. One Parcel of Land Located at 7326 Highway 45 North, Three Lakes, Oneida County, Wis.*, 965 F.2d 311, 316 (7th Cir. 1992) ("a corporation acts through its agents… [s]imilarly, a corporation 'knows' through its agents"); *Prime Eagle Group Ltd. v. Steel Dynamics, Inc.*, 614 F.3d 375, 379 (7th Cir. 2010) ("agency recognizes only two exceptions to the proposition that an employee's knowledge of a matter within the scope of his duties is imputed to the employer"). There is no dispute that: (1) LVNV – via its master agent Resurgent – used debt servicers for the purpose of collecting debts in both legal and non-legal settings, (Dkt. No. 62, Ex. C at 6-7; 42); (2) that Resurgent assigned the debt collection duties upon Blatt, Bleecker, and Miller for the purpose of collecting debt owed by Torres to LVNV, (Dkt. No. 72, at ¶ 9); (3) that all three prior servicers were aware of Torres's legal representation at times during or after their respective periods of

representation through direct communications with Torres's counsel, (*Id.* ¶ 10); (4) that Resurgent account records were updated at some point in time to indicate a 'cease and desist' instruction within their account records, (Dkt. No. 57, at ¶ 26); and, (5) that Resurgent and any of the sub-servicers, including NRC, were at all times assigned to carry out collection efforts on behalf of LVNV. (Dkt. No. 72, at ¶¶ 8-9, 12.) Additionally, although NRC lacked knowledge that Torres had counsel, debt collectors are still liable for violations of the FDCPA that are committed by others acting on their behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016); *accord Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 404-06 (3rd Cir. 2000); *Fox v. Citicorp Credit Svcs, Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994). In a similar manner, LVNV is still liable for the communications made by NRC directly to Torres if she can prove all other elements of §§ 1692a and 1692c. Accordingly, there is no dispute of a material fact that LVNV knew of Torres's representation under § 1692c(a)(2).

This leaves the bona fide error defense as LVNV's only escape from liability under the FDCPA. It is the party claiming the defense under § 1692k(c) to show, by a preponderance of evidence, that the violation was (1) not intentional; (2) the result of a bona fide error; and (3) notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. *Leeb v. Nationwide Credit Corp.*, 806 F.3d 895, 899 (7th Cir. 2015) (citing 15 U.S.C. § 1692k(c)).

An act may be intentional for the purpose of civil liability even if a debt collector lacks actual knowledge that her conduct violated the law. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 574 (2010); *but see Kort v. Diversified Collection Svcs, Inc.*, 394 F.3d 530, 537 (7th Cir. 2005) ("[a] debt collector need only

show that its FDCPA violation was unintentional, not that its actions were unintentional") (citing *Nielsen v. Dickerson*, 307 F.3d 623, 641 (7th Cir. 2002) (a debt collector "may avail itself of the bona fide error defense because it had no intent to violate the FDCPA, although its actions were deliberate")). Furthermore, proof that a party is unaware of important facts – such as whether a party is represented by counsel – is generally a good first step in disproving intent. *See Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 996 (7th Cir. 2003). Applied here, LVNV's master servicing agent assigned the Torres account to a collection agency that regularly makes direct contact with debtors, *see* (Dkt. No. 62, Ex. C, at 7), but the assignment was in error because NRC normally does not interact with consumers who are represented with counsel. (Dkt. No. 72, Ex. 4, at 34-35.) The only response Torres provides is that LVNV's prior knowledge that she had counsel during the state court action, and while her account was assigned to other servicers, proves that the communications were made intentionally. (Dkt. 75, at 5-6.) This argument is unavailing when weighed against the fact that NRC did not have knowledge that Torres was represented by counsel, and Torres does not submit contrary evidence to support that the contact with Torres was unintentional. Thus, LVNV satisfies the "unintentional" prong of the affirmative defense.

Second, the mistake was bona fide. A bona fide error is on made "in good faith; a genuine mistake, as opposed to a contrived mistake." *Kort v. Diversified Collection Svcs., Inc.*, 394 F.3d 530, 538 (7th Cir. 2005). Pointing again to NRC's actions, the facts are undisputed that the communication with Torres was the result of a mistaken belief that Torres was unrepresented. Torres repeatedly claims that the knowledge of representation proves the mistake was not bona fide. (Dkt. No. 75, at 8.) However the lack of

16

knowledge by NRC proves, by the preponderance of evidence, that the mistake was in fact bona fide.

However, LVNV cannot assert the defense because they fail show the maintenance of procedures reasonably adapted to avoid any such error. LVNV is correct that procedures need only be "reasonable." *See Turner*, 330 F.3d at 995-96; *Jenkins v. Heintz*, 124 F. 3d 824, 828 (7th Cir. 1997) (a defendant is required to present evidence creating a reasonable inference, not a mere possibility). But, if anything, LVNV's actions - via Resurgent - represent a scenario where the debt collector wholly failed to maintain procedures reasonably adapted to avoid errors that could result in an unlawful communication. *See Leeb*, 806 F.3d at 899-900 (7th Cir. 2015) (quotations omitted). At one point, LVNV claims a lack of knowledge that Torres had counsel because three prior servicing agents failed to notify them about Torres's representation of counsel. (Dkt. No. 62, Ex. C, at 22, 26-28, 32-33, 36.) Yet at another point, LVNV insists that they have policies in place to ensure that critical information is retained, shared or stored. (*Id*. at 39-40, 46; Dkt. No. 72, Ex. 3, at ¶ 10.) These factual assertions identify three out of four servicers, retained to collect the Torres debt, who failed to comply with a "thinly specified policy" in place to avoid unintentional, bona fide errors. *Leeb*, 806 F.3d at 900. Accordingly, LVNV fails to show by a preponderance of evidence that they maintain policies reasonably adapted to avoid any such error, and so they cannot assert the affirmative defense.

## **CONCLUSION**

For the reasons above, the Plaintiff's Motion for Summary Judgment [55] is granted in part with respect to LVNV, and the Defendants' Motion for Summary

Judgment [70] is granted in part with respect to NRC. Torres is entitled to actual and statutory damages against LVNV pursuant to 15 U.S.C. § 1692k.

Date: March 27, 2018